Filed 7/8/13  P. v. Farber CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037427 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS110178) |
| v. | |
| DEVON JOHN FARBER, | |
| Defendant and Appellant. | |

Defendant Devon John Farber appeals after a jury convicted him of inflicting corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a))[1] and found that he personally inflicted great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)).  After finding that defendant had a prior felony conviction that qualified as a strike (§ 1170.12, subd. (c)(1)) and that he had served a prior prison term (§ 667.5, subd. (b)), the trial court imposed a seven-year prison sentence.

On appeal, defendant contends:  (1) there was insufficient evidence to support his conviction and the great bodily injury enhancement; (2) trial counsel was ineffective for failing to object to prosecutorial misconduct during argument to the jury; and (3) the trial court erred by staying, rather than striking, the prior prison term enhancement.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

For reasons explained below, we reject defendant's challenges to his conviction and the great bodily injury enhancement. However, we will reverse the judgment and remand the matter to the trial court for sentencing proceedings on the prior prison term enhancement, which was improperly stayed.

## BACKGROUND

### A. Victim's Trial Testimony

In January of 2011, Kishora McDonald was living with defendant; they planned to get married. McDonald and defendant lived in a trailer on property owned by defendant's mother. McDonald had four children. Her son Nathan spent the weekends with her.

On January 22, 2011, McDonald and defendant were in their trailer, watching a movie. McDonald began drinking Seagram's 7. She drank an amount equivalent to about 10 shots.

Defendant and McDonald began arguing at around 11:00 p.m. During the argument, defendant opened the trailer door and "kind of escorted" McDonald outside by pushing on the back of her arms, then slammed and locked the door. McDonald banged on the door, but defendant told her to leave him alone. McDonald said she needed her purse, but defendant ignored her.

McDonald went around to the back of the trailer. She yelled and banged on a window. Defendant came outside and "confronted" her. He reiterated that McDonald should leave him alone. McDonald continued to yell. Defendant then grabbed McDonald by the arms, shook her two times, and "shoved [her] aside." "After that, [she] was on the ground."

McDonald's face hit the ground, causing her teeth to go completely through her lip. There was "a lot of blood." Her nose and chin were also scraped. McDonald went

to the hospital and received 10 stitches – six on the outside of her lip and four on the inside of her lip.

From the hospital, McDonald called her former father-in-law, William Rose. She told him she had "gotten injured by [defendant]." After seeing McDonald's injuries, Rose called the sheriff's department.

At the hospital, McDonald told staff and a police officer that she had slipped and fallen on stairs. She said there had been no physical violence. She was scared to tell the truth, fearing that someone would call Child Protective Services (CPS) and report that she had been drinking. CPS had previously been involved with McDonald's children due to her use of alcohol, and McDonald thought her children might get taken away from her if there was another report. She also felt partially guilty since she had been drunk and had been banging on the trailer windows.

At trial, on direct examination, McDonald clarified that her fall was "through no fault of [her] own." She testified that she and defendant "were both at fault," explaining, "I mean he grabbed me. It was his fault, yeah." However, it was "hard for [her] to say" that defendant "threw [her] face into the ground" because she did not "remember exactly what happened."

On cross-examination, McDonald acknowledged that there were lots of divots in the grass outside of the trailer and that the ground was not level. She also acknowledged that after defendant put his hands on her shoulders, the next thing she remembered was falling down on the ground.

### B.    Defendant's Admissions

Monterey County Sheriff Deputy Jesus Reyes was dispatched to defendant's residence. Defendant admitted grabbing and pushing McDonald out of the trailer, saying "somehow she face landed." After his arrest, defendant again admitted grabbing McDonald and pushing her out. He added that once she was outside the trailer, he pushed her again and "she somehow face landed."

3

### C.    Testimony of Nathan and Dakota

At the time of the incident, McDonald's son Nathan was playing video games with defendant's son Dakota in the sunroom of the house.  The trailer was about 10 feet away from the sunroom.

Nathan, who was 12 years old at the time of trial, testified for the prosecution. Nathan heard defendant and McDonald arguing.  He caught a "glimpse" of McDonald as she left the trailer and reached in the window.  He saw defendant come out of the trailer and grab McDonald.  It "looked like" defendant grabbed her, shook her a little bit, and then pushed her down.  Nathan acknowledged that he "didn't really see the full thing," however.

Dakota, who was 14 years old at the time of trial, testified for the defense.  Like Nathan, he heard the argument between defendant and McDonald.  He stuck his head outside and "could easily see."  Dakota saw McDonald come out of the trailer, but he "didn't see anything after that."  He returned to playing video games and was "in [his] gaming zone."  According to Dakota, Nathan remained on the couch and would have had a hard time seeing through the window because of the television's glare.

### D.    Expert Witness Testimony

Rosemary Soto had worked for the Women's Crisis Center for six years.  She described certain "common patterns" in domestic violence cases.  Victims often want to go back to the person who hurt them – in fact, she estimated this was true in 90 percent of domestic violence cases.  Victims often do not want the person to suffer any legal repercussions, particularly if it would cause financial strain.  Victims commonly change their stories to protect the person, in hopes that things would get better and to avoid the additional stress of the legal system.  Victims often minimize their injuries and make up stories due to embarrassment.

*E.      Verdicts and Sentencing*

A jury found defendant guilty of inflicting corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)), and it found true an allegation that defendant personally inflicted great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)).  The trial court found true allegations that defendant had previously been convicted of a serious felony that qualified as a strike (§ 1170.12, subd. (c)(1)) and had served a prior prison term (§ 667.5, subd. (b)).

At the sentencing hearing, the trial court imposed an aggregate prison term of seven years:  the two-year lower term for the crime of inflicting corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)), doubled to four years pursuant to section 1170.12, subdivision (c)(1), and a consecutive three-year term for the great bodily injury enhancement (§ 12022.7, subd. (e)).  The trial court imposed, but stayed, a one-year term for the prior prison term enhancement.  (§ 667.5, subd. (b).)

**DISCUSSION**

*A.      Sufficiency of the Evidence*

Defendant contends the evidence was insufficient to support his conviction of inflicting corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)) and to support the allegation that he personally inflicted great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)).  Defendant claims he did not directly inflict the injury on McDonald.  According to defendant, he merely shook McDonald and then let go of her, and "[i]t was after he let go of her that she lost her footing on the uneven ground and fell."

**1.      Standard of Review**

In reviewing a claim of insufficiency of the evidence on appeal, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

5

beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)

## 2. Analysis

In asserting that the evidence was insufficient to support his conviction and great bodily injury allegation, defendant relies primarily on *People v. Jackson* (2000) 77 Cal.App.4th 574 (*Jackson*). The *Jackson* court held that when "the victim's injury does not result from direct physical contact by the defendant, Penal Code section 273.5 is not violated." (*Id.* at p. 575; see also *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 347 ["To 'personally inflict' an injury is to directly cause an injury, not just to proximately cause it."].)

In *Jackson,* "the victim's injuries resulted from her attempt to escape rather than from the battery." (*Jackson, supra,* 77 Cal.App.4th at p. 575.) The defendant had confronted the victim and pushed on her shoulder and head. He had pushed her up against a car when she tried to get away. After being pushed against the car, the victim "turned around" and "tripped over the curb," landing on the grass and suffering abrasions. (*Id.* at p. 576.) The *Jackson* court stated that if the victim had fallen as a direct result of the defendant's blows, it would conclude that he "inflicted the corporal injury she suffered in the fall." (*Id.* at p. 580.) But, the *Jackson* court explained, since section 273.5 "is not violated unless the corporal injury results from a direct application of force on the victim by the defendant[,] . . . the evidence in this case was insufficient to prove that appellant 'inflicted' corporal injury on his girlfriend within the meaning of Penal Code section 273.5." (*Ibid.*) The *Jackson* court modified the judgment to the lesser, necessarily included offense of battery against a cohabitant (§ 243, subd. (e)(1)). (*Ibid.*)

6

Defendant's reliance on *Jackson* is misplaced. Here, there was substantial evidence that McDonald's injuries resulted from a personal and direct application of force by defendant. McDonald testified that after defendant "shoved [her] aside," she ended up "on the ground." Nathan likewise testified that defendant pushed McDonald down. This testimony provides substantial evidence that McDonald's fall was the direct result of defendant's application of force.

Defendant argues that McDonald's injuries resulted from a trip and fall that he *proximately* caused. Defendant claims that "after he let go of her," McDonald "lost her footing on the uneven ground and fell." Defendant cites to a portion of McDonald's cross-examination to support this claim. After McDonald agreed that defendant had come out of the trailer and put his hands on her, trial counsel asked, "And then the next thing that happens is that you lose your footing and you fall down and you bite your lip and this injury is caused, correct?" McDonald replied, "Um, pretty much. . . ." McDonald also acknowledged that after defendant grabbed her shoulders, she did not really remember what had happened.

The cited portion of McDonald's testimony would not preclude a rational trier of fact from finding that McDonald's injuries were directly caused by defendant's personal application of force. McDonald never directly testified that she tripped and fell after defendant pushed her; she ambiguously answered "pretty much" when trial counsel suggested that was what had happened. (Compare *Jackson, supra,* 77 Cal.App.4th at p. 576.) The rest of her testimony established that defendant's push directly caused her to fall. Nathan corroborated that McDonald fell as a direct result of defendant's push. Rose testified that McDonald said she had "gotten injured by [defendant]." Further, defendant's admission – that McDonald "somehow face landed" after he pushed her – further indicates that McDonald's injuries were personally inflicted by defendant and directly resulted from his application of force, rather than from "a chain of events" set in motion from his application of force. (See *id*. at p. 577.)

In sum, the record contains substantial evidence to support a finding that McDonald fell to the ground because defendant pushed her, and thus that her injuries resulted "from a direct application of force" by defendant. (See *Jackson, supra,* 77 Cal.App.4th at p. 580.) We therefore find no merit to defendant's insufficiency-of-the-evidence challenges to his conviction and the great bodily injury enhancement.[2]

### B.    *Ineffective Assistance of Counsel/Prosecutorial Misconduct*

Defendant contends the prosecutor committed misconduct during argument to the jury, by referring to facts outside the record – specifically, the fact that defendant had committed prior acts of domestic violence against other victims. Defendant contends the prosecutor's reference to his prior domestic violence was also an improper appeal to the passions and prejudices of the jury. Since trial counsel failed to object, defendant does not raise the prosecutorial misconduct claim directly, but rather in the context of arguing that he received constitutionally ineffective assistance of counsel.

### 1.    Proceedings Below

Defendant's trial brief included a motion in limine to exclude evidence of his prior domestic violence. The prosecution's trial brief included a motion in limine to introduce two prior domestic violence incidents: a 1998 incident and a 2001 incident, both of which led to convictions. According to the prosecution's trial brief, the 2001 incident involved a sexual assault.

The trial court ruled that the prosecution could not present evidence of the 1998 incident nor the "sexual aspect" of the 2001 incident, but could introduce the "domestic violence aspect" of the 2001 incident.

---

[2] Because we find substantial evidence to support the great bodily injury enhancement, we need not address defendant's claim that his conviction does not qualify as a violent felony under section 667.5, subdivision (c) and that as a result he is entitled to additional presentence custody credits.

During opening statements, the prosecutor indicated he would introduce evidence of defendant's prior domestic violence, as permitted by the trial court's ruling. The prosecutor referred to defendant as a "thumper," defining the term as someone who has anger control problems and "likes to thump on the very people that love him." The prosecutor told the jury that it would hear about a 2001 incident involving a different victim, stating that defendant "pretty much battered her." However, the prosecution did not introduce evidence of the 2001 incident or any other prior domestic violence committed by defendant.

During arguments to the jury, trial counsel reminded the jury of the prosecutor's opening statement. Trial counsel noted that the prosecutor had called defendant "a thumper" and promised to bring in evidence of his prior domestic violence. Trial counsel then argued, "He didn't bring in the evidence that he said he was going to bring in. That speaks volumes."

In response, the prosecutor argued, "Yes, but remember domestic violence. Why would – isn't it tough for people to relive that? Do we really, as the prosecution, as a State, have to win at all costs? Have to make people relive things just because we want to win? No. That's my point."

### 2. Legal Standards

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) "counsel's performance fell below a standard of reasonable competence" and (2) "prejudice resulted." (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*); *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) Thus, "[e]ven where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that, ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citations.]" (*Anderson, supra*, at p. 569.)

9

The general rules applying to claims of prosecutorial misconduct are as follows: "Under the federal Constitution, to be reversible, a prosecutor's improper comments must ' "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." ' [Citations.] ' "But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citations.]' [Citation.]" (*People v. Cunningham* (2001) 25 Cal .4th 926, 1000.) Specifically, in argument to the jury, the prosecutor may not "suggest the existence of 'facts' outside the record." (*People v. Benson* (1990) 52 Cal.3d 754, 795.) In addition, "appeals to the sympathy or passions of the jury are inappropriate at the guilt phase of a criminal trial. [Citations.]" (*People v. Fields* (1983) 35 Cal.3d 329, 362, fn. omitted.)

### 3. Analysis

Defendant contends the prosecutor's argument to the jury was improper because it "indicated to the jury that the witness who was to give evidence of the prior incident was so traumatized by it that she could not appear to testify." Respondent argues that the prosecutor's remarks were not improper because they were made "in response to defense counsel's own argument about the prosecutor having failed to introduce any evidence that [defendant] had been involved in a prior domestic violence incident, despite indicating that he would do so during his opening statement."

Since trial counsel initially argued that the prosecutor failed to introduce any evidence of his prior domestic violence, he "opened the door to the prosecutor's response" such that an objection could properly have been overruled. In essence, defendant invited the error. (See 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Reversible Error, § 35, p. 565 [invited error doctrine can apply to "misconduct of the prosecutor induced by improper remarks of defendant's counsel"].) When a claim of prosecutorial misconduct is based upon remarks during closing argument, "[a]

10

circumstance militating against any claimed prejudice is that remarks of a similar nature have been exchanged." (*People v. Mason* (1960) 184 Cal.App.2d 317, 362 [no prejudicial misconduct by prosecutor, who was responding to defense counsel's argument]; see also *People v. Friend* (2009) 47 Cal.4th 1, 35 [where defendant opened the door to certain evidence on direct examination, there was no prosecutorial misconduct when that same evidence was elicited on cross-examination].)

Even if trial counsel should have objected, and even if the objection had merit, we would conclude defendant was not prejudiced. Pursuant to CALCRIM No. 200, the trial court instructed the jury not to "let bias, sympathy, prejudice or public opinion influence your decision." Pursuant to CALCRIM No. 222, the trial court instructed the jury that "[n]othing that the attorneys say is evidence" and that the jury was required to "decide what the facts are in this case" based only on "the evidence that was presented in this courtroom." We presume the jury relied on the instructions, not the arguments of counsel, in reaching its verdict. (See *People v. Morales* (2001) 25 Cal.4th 34, 47.)

Because any objection could have been properly overruled and because there is no reasonable probability defendant was prejudiced by the prosecutor's remarks, trial counsel was not ineffective for failing to object.

### C.      *Prior Prison Term Allegation*

Defendant contends the trial court erred by imposing and then staying the prior prison term allegation (§ 667.5, subd. (b)). The Attorney General concedes that the trial court exceeded its jurisdiction in staying the enhancement. (See *People v. Meloney* (2003) 30 Cal.4th 1145, 1155-1156; *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-392.) The parties agree that the matter should be remanded to the trial court for a new sentencing hearing, at which the trial court shall either impose the enhancement or strike it, with the reasons for the dismissal "set forth in an order entered upon the minutes," in accordance with section 1385, subdivision (a). (See *People v. McCray* (2006) 144

11

Cal.App.4th 258, 267.)  We agree that remand is required, but we express no opinion as to how the trial court should exercise its discretion on remand.

## DISPOSITION

The judgment is reversed.  The trial court is directed to hold a new sentencing hearing and either impose the Penal Code section 667.5, subdivision (b) enhancement or strike it in accordance with the dictates of Penal Code section 1385.


_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:


_____
ELIA, ACTING P.J.


_____
MÁRQUEZ, J.