[No. B126622. Second Dist., Div. Four. Jan. 12, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
KIMRILEY JACKSON, Defendant and Appellant.

*Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.

## COUNSEL

Ralph Joseph Novotney, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—Penal Code section 273.5 criminalizes the willful infliction of corporal injury resulting in a traumatic condition upon a cohabitant. The issue presented in this case is whether appellant violated that statute since the victim's injuries resulted from her attempt to escape rather than from the battery. For reasons explained in this opinion, we conclude that where, as here, the victim's injury does not result from direct physical contact by the defendant, Penal Code section 273.5 is not violated. Therefore, we shall modify the judgment to reflect a conviction of the lesser, necessarily included crime of battery in violation of Penal Code section 243, subdivision (e)(1), and remand for resentencing.

### FACTUAL SUMMARY

The evidence was brief and uncontradicted. On April 15, 1998, appellant confronted his girlfriend, Ms. Bell, outside the residence where they lived

together. Appellant asked Ms. Bell what was going on between her and a man named Carlos. Appellant repeated his questions, pushing Ms. Bell on her shoulder and head with the heel of his hand. The argument continued across the street as Ms. Bell attempted to get away from appellant. There, appellant pushed Ms. Bell up against a car. She testified: "When I was pushed against the car I turned, I turned around, and I tripped over the curb of the sidewalk. [¶] And I landed on the grass there." As a result of her fall, Ms. Bell suffered abrasions to her left thigh and calf.

## DISCUSSION

The prosecutor who filed the charges against appellant in this matter had several statutes to consider. The facts came within Penal Code section 242 which provides: "A battery is any willful and unlawful use of force or violence upon the person of another." They also satisfied section 243, subdivision (e)(1), which declares a battery committed by a person in a particular relationship with the victim (spouse or former spouse, cohabitant, parent of a child, fiancé or fiancée, or former fiancé or fiancée, or a present or past dating relationship) to be a misdemeanor. If serious bodily injury had been inflicted on the victim, felony charges could have been filed pursuant to Penal Code section 243, subdivision (d), but that statute did not apply in this case because the victim's injuries were abrasions. Instead, charges were filed pursuant to Penal Code section 273.5, subdivision (a), a felony misdemeanor (wobbler), which provides: "Any person who willfully inflicts upon his or her spouse, or any person who willfully inflicts upon any person with whom he or she is cohabiting, or any person who willfully inflicts upon any person who is the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both."

Appellant contends the evidence was not sufficient to prove that he violated this statute because the victim's injuries resulted from her own movements. Appellant argues that the verb "inflict" means to directly strike, hit or apply some physical force. He observes that although no published case has discussed the proper definition of "inflict" for purposes of Penal Code section 273.5, all cases affirming convictions for that crime have involved an injury resulting from the defendant's direct application of physical force on the victim.

Respondent argues that the issue is causation: whether appellant's "act or omission" set in motion a chain of events that produced "as a direct, natural, and probable consequence" the injury and without which the injury would not occur. Respondent reasons that since the victim's injury resulted from appellant's repeated pushing of her, even though she fell because she tripped, stumbled or lost her balance, the injury was "caused" by the pushing. Respondent adds that even if the victim fell as the result of her own clumsiness, this fact would not undermine the judgment because it "can be categorized as a pre-existing condition which does not relieve the aggressor of culpability." Alternatively, respondent argues that the victim's tripping may be viewed as a dependent intervening cause, "a normal or involuntary result of appellant's original act."

Our function in resolving this dispute is to determine the Legislature's intent. ■ Under familiar rules of statutory interpretation, we look first to the language of the statute. Justice Traynor described this task: "An insistence upon judicial regard for the words of a statute does not imply that they are like words in a dictionary, to be read with no ranging of the mind. They are no longer at rest in their alphabetical bins. Released, combined in phrases that imperfectly communicate the thoughts of one man to another, they challenge men to give them more than passive reading, to consider well their context, to ponder what may be their consequences. Speculation cuts brush with the pertinent question: what purpose did the Legislature seek to express as it strung those words into a statute? The court turns first to the words themselves for the answer. It may also properly rely on extrinsic aids, the history of the statute, the legislative debates, committee reports, statements to the voters on initiative and referendum measures. Primarily, however, the words, in arrangement that superimposes the purpose of the Legislature upon their dictionary meaning, stand in immobilized sentry, reminders that whether their arrangement was wisdom or folly, it was wittingly undertaken and not to be disregarded." (*People v. Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)

■ We apply this focus to the words "willfully inflicts." The Oxford English Dictionary defines the verb "inflict," as: "To lay on as a stroke, blow, or wound; to impose as something that must be suffered or endured; to cause to be borne." (5 Oxford English Dict. (1st ed. 1933) p. 269.) The first and second of these definitions carry a connotation of immediacy or direct effect which is consistent with the primary root of the word, *fligere*, a Latin term meaning "to dash or strike (one thing on or against another), to inflict (punishment)." (*Ibid.*) These definitions support the interpretation advanced by appellant. The third, however, is broader, and could arguably encompass the causation approach advocated by respondent. Accordingly, we must look beyond the common usage of "inflict."

Penal Code section 273.5 was enacted in 1977. At that time Penal Code section 273d declared it to be a felony for a husband to "inflict" corporal injury resulting in a traumatic condition on his wife.[1] Section 273.5 broadened this prohibition by (1) providing that both men and women could be violators and victims; and (2) expanding the kinds of relationships in which the crime could occur. (See *Review of Selected 1977 California Legislation* (1978) 9 Pacific L. J. 281, 429-430.) Case law interpreting section 273d had held that battery was a lesser included misdemeanor offense within the charge of corporal punishment. (*People v. Atkins* (1975) 53 Cal.App.3d 348, 352 [125 Cal.Rptr. 855]; *People v. Stewart, supra,* 188 Cal.App.2d 88, 90.) The Legislature is presumed to have been aware of this judicial interpretation of the language it chose to employ in both statutes. (*People v. Cruz* (1996) 13 Cal.4th 764, 774 [55 Cal.Rptr.2d 117, 919 P.2d 731].) It therefore appears that the Legislature intended, in section 273.5, to define as a felony a very particularized battery, i.e., one in which corporal injury is inflicted. A battery, of course, "cannot be accomplished without a touching of the victim. [Citation.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 38-39 [61 Cal.Rptr.2d 84, 931 P.2d 262].) The history of section 273.5 supports the inference that the Legislature intended to define a crime in which the corporal injury results from a direct application of force by the defendant upon the victim.

This construction is inconsistent with the view that an infliction is shown so long as the injury was caused by defendant's act. But it is beyond question that the Legislature may, and has, defined crimes and punishments in which causation analysis plays no practical part. For example, if a defendant has possessed contraband, burglarized a premises or battered another, criminal punishment is imposed to deter socially intolerable conduct regardless of any injury which may have been caused by the act. (See *People v. Roberts* (1992) 2 Cal.4th 271, 316 [6 Cal.Rptr.2d 276, 826 P.2d 274].) Causation most commonly becomes an issue where the crime is defined in terms of its result, as in the crime of homicide. In such cases, "moral culpability is found . . . when, despite the lack of any intent to kill, the consequences of the evil act are so natural or probable that liability is established as a matter of policy. Thus, for example, the Legislature has chosen to designate certain felonies as so inherently dangerous that death in the course of their commission or completion constitutes first degree murder. (§ 189.)" (*Id.* at pp. 316-317) In contrast, the Legislature also has enacted statutes under which the direct-natural-and-probable-consequence test is not

---

[1] Former section 273d provided: "Any husband who willfully inflicts upon his wife corporal injury resulting in a traumatic condition, and any person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition, is guilty of a felony." (See *People v. Stewart* (1961) 188 Cal.App.2d 88, 90 [10 Cal.Rptr. 217].)

employed to determine criminal liability and punishment. For example, a defendant who directs another to attack a victim and blocks the victim's escape, but does not strike the victim, is not subject to an enhancement for infliction of great bodily injury pursuant to Penal Code section 12022.7, even though the injury was the direct result of his or her direction and assistance. (*People v. Cole* (1982) 31 Cal.3d 568, 579 [183 Cal.Rptr. 350, 645 P.2d 1182].) The reason is that the Legislature specifically limited the additional punishment to "[a]ny person who, with the intent to inflict such injury *personally* inflicts great bodily injury. . . ." (Pen. Code, former § 12022.7, italics added.) Courts have construed statutory language to require the same result even where the Legislature was not so specific. For example, the California Supreme Court held that an aider and abettor in the commission of a murder was not subject to the increased penalty for use of a firearm pursuant to Penal Code section 12022.5, even though the statute, as worded at that time ("any person who uses a firearm . . .") did not specify that the use must be personal. (*People v. Walker* (1976) 18 Cal.3d 232, 235-236 [133 Cal.Rptr. 520, 555 P.2d 306].) The court reasoned that the statute, which imposed derivative liability for an accomplice's conduct, did not also impose derivative enhancements for the accomplice's personal conduct. (*Id.* at p. 242.)

A recent case, *People v. Rodriguez* (1999) 69 Cal.App.4th 341 [81 Cal.Rptr.2d 567], is useful to the analysis. The issue in *Rodriguez* was whether the defendant's prior conviction for willful resistance of a police officer, causing death or serious bodily injury to the officer in violation of Penal Code section 148.10, was a serious felony within the meaning of the "Three Strikes" law. In order to prove that it was, the prosecution bore the burden of proving that it was a felony "in which the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice." (Pen. Code, § 1192.7.) The trial court instructed the jury that " 'a person personally inflicts injury to another when he directly performs an act or acts that cause the physical injury.' " (69 Cal.App.4th at p. 346.) The court also instructed: " 'Criminal law has its own particular way of defining cause. A cause of injury is an act that sets in motion a chain of events that proceed a direct, natural and possible consequence of the act, the injury and without which the injury would not occur.' " (*Id.* at pp. 346-347.) The reviewing court held this was error, explaining: "The instruction expressly equates 'personally inflict' with 'proximate cause.' It tells the jury that personally inflict means to directly perform àn act that *causes* injury and then expressly defines cause as proximate cause. The problem with the instruction is that the definition of cause is inaccurate in this context. To 'personally inflict' an injury is to directly cause an injury, not just to proximately cause it." (*Id.* at p. 347.) The appellate court held the instruction was error because it allowed

the jury to find against Rodriguez if the officer's injury was "a 'direct, natural and probable consequence' of Rodriguez's action, even if Rodriguez did not personally inflict the injury." (*Id.* at pp. 347-348.) The reviewing court reasoned that it should "decline to impute the proximate cause concept into the statute when the Legislature has left it out." (*Id.* at p. 350.)

That rationale applies in this case, as well. If the victim fell as a direct result of the blows inflicted by appellant, we would conclude that appellant inflicted the corporal injury she suffered in the fall. Or if the Legislature had defined Penal Code section 273.5 in broader terms,[2] rather than "willfully inflicts," we would conclude that it intended to extend criminal liability to the direct, natural and probable consequences of the battery. Since it appears that the Legislature intended section 273.5 to define a very particular battery, we conclude the section is not violated unless the corporal injury results from a direct application of force on the victim by the defendant. It necessarily follows that the evidence in this case was insufficient to prove that appellant "inflicted" corporal injury on his girlfriend within the meaning of Penal Code section 273.5. A new trial is not necessary, however, because this court has the power to modify the judgment to a lesser, necessarily included offense (*People v. Bechler* (1998) 61 Cal.App.4th 373, 379 [71 Cal.Rptr.2d 532]), which in this case is battery against a cohabitant in violation of Penal Code section 243, subdivision (e)(1).[3]

## DISPOSITION

The judgment is modified to reflect a conviction of one count of battery against a cohabitant in violation of Penal Code section 243,

---

[2]For example, Penal Code section 273a punishes "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, *willfully causes or permits* any child to suffer, *or inflicts* thereon unjustifiable physical pain or mental suffering, or having the care of custody of any child, *willfully causes or permits* the person or health of that child to be injured, or *willfully causes or permits* that child to be placed in a situation where his or her person or health is endangered[.]" (Italics added.) Similarly, Penal Code section 368 punishes "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, *willfully causes or permits* any elder or dependent adult . . . to suffer, *or inflicts* thereon unjustifiable physical pain or mental suffering[.]" (Italics added.)

[3]Appellant contended in his brief that the insufficiency required reversal of the judgment. Respondent argued for affirmance. Pursuant to Government Code section 68081, we afforded the parties an opportunity to present their views on this disposition through supplemental briefing. Both parties agree that Penal Code section 1181, subdivision 6, vests this court with power to modify the judgment to reflect a conviction of a lesser, necessarily included offense where the evidence shows the defendant to be not guilty of the crime of which he was convicted.

subdivision (e)(1), and as modified is affirmed. The matter is remanded for resentencing.

Hastings, J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 19, 2000.