Filed 2/27/13  P. v. Paris CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056096 |
| v. | (Super.Ct.No. SWF1101895) |
| PAUL ERIC PARIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the former Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Paul Eric Paris appeals following a guilty plea, asserting that the trial court abused its discretion in imposing the upper term on the principal count and that he is entitled, as a matter of equal protection, to presentence conduct credits at the two-for-two rate provided for in the current version of Penal Code section 4019.

We find no abuse of discretion, and we reject defendant's equal protection argument.

PROCEDURAL HISTORY

Defendant was charged with willful infliction of corporal injury on a spouse or cohabitant, resulting in traumatic condition (Pen. Code, § 273.5, subd. (a); count 1);[1] evading a peace officer (Veh. Code, § 2800.2; count 2); and criminal threats (§ 422; count 3). The information also alleged one prison prior. (§ 667.5, subd. (b).)

A jury trial commenced on January 23, 2012. Following the testimony of the victim, Jane Doe, defendant informed his attorney that he wished to plead guilty. Despite failing to reach a plea bargain with the prosecutor, defendant chose to plead guilty on all counts and to admit the prison prior.

The court referred the case to the probation department for a report and set a sentencing date. At the sentencing hearing, the court sentenced defendant to the upper term of four years on count 1, a consecutive term of eight months on count 2, and a consecutive one-year term for the prison prior. The court imposed a concurrent term of

_____

[1] All further statutory citations refer to the Penal Code unless another code is specified.

2

eight months on count 3 and stayed it pursuant to section 654. The court awarded presentence credits and ordered victim restitution as determined by the probation department. It imposed appropriate fines, assessments and fees.

Defendant filed a timely notice of appeal and obtained a certificate of probable cause to challenge the sentence as violative of his state and federal constitutional rights.

FACTS

On August 10, 2011, defendant was living with Jane Doe, his fiancée. They went to the home of a neighbor, Curtis Hartwell. They had a drink or two while visiting with Hartwell and then returned home. Doe and defendant drank most of a bottle of vodka and two quarts of beer while playing dominoes. An argument started when defendant wanted to go somewhere but Doe wanted to stay home. The argument escalated, and defendant sought to restrain Doe from leaving. He put his hands on her and perhaps hit her. Doe eventually ran to Hartwell's house. She told Hartwell that defendant had hit her and asked if she could come in.

A few minutes later, defendant came to Hartwell's house and asked if he could come in. Defendant was initially conciliatory toward Doe. He brought a burrito and tried to get her to eat. When she refused, defendant became enraged and began choking her. Hartwell pulled defendant off her, and Doe ran into the bedroom and closed the door. Defendant entered the bedroom and grabbed Doe. She fell to the floor, and he began kicking her and stomping her in the back.

At some point during the altercation, Hartwell called 911.  He also intervened again and got defendant away from Doe.

When the police arrived, Doe, defendant and Hartwell were all standing outside Hartwell's house.  Hartwell told the officer that defendant had "jumped" Doe and slapped her and "choked her out." Defendant walked away, ignoring the officer's order to stop. He got into a car and drove away.  Another police unit pursued defendant with overhead lights illuminated, but defendant did not stop, running four stop signs during the pursuit. Defendant returned to the street on which Hartwell lived and turned the vehicle toward Hartwell, Doe and the officer.  He accelerated toward them, but lost control of the vehicle, hit the curb and then collided with a brick planter.  When defendant was taken into custody, officers found a large kitchen knife in his possession.

As a result of the altercation, Doe had bruises on her neck, arms and back.

LEGAL ANALYSIS

1.

IMPOSITION OF THE UPPER TERM ON COUNT 1 WAS NOT AN ABUSE OF

DISCRETION

Defendant contends that the trial court abused its discretion in imposing the upper term of four years on count 1. He contends that the aggravating factors identified in the probation report are either inapplicable or unsupported by the evidence, and that the court failed to take into account defendant's expression of remorse as a mitigating factor.

The Attorney General first contends that defendant forfeited his right to challenge the court's exercise of sentencing discretion because he did not object at the sentencing hearing to the factors the court relied upon. Such a claim may be forfeited by failure to object, but only "when the trial court 'clearly apprise[s]' the parties 'of the sentence the court intends to impose and the reasons that support any discretionary choices' [citation], and gives the parties a chance to seek 'clarification or change' [citation] by objecting to errors in the sentence. The parties are given an adequate opportunity to seek such clarifications or changes if, at *any time* during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties before the actual sentencing." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752.) "It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott*[2] rule becomes inapplicable." (*Ibid*.)

---

[2] *People v. Scott* (1994) 9 Cal.4th 331.

Here, the trial court did not announce its tentative sentencing choice at the outset of the hearing or allow further argument once it did announce its intention to impose the upper term as recommended by the probation report. Consequently, defendant did not forfeit this claim for appeal.

Nevertheless, the claim is without merit. Subject to certain prohibitions not pertinent here, trial courts have broad discretion in identifying and applying factors in aggravation. An exercise of legal discretion which is grounded on reasoned judgment and guided by the applicable legal principles and policies must be upheld on appeal. An abuse of discretion occurs if the court relies upon circumstances that are not relevant to the decision or otherwise constitute an improper basis for decision. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) Defendant has not met that burden. An aggravating circumstance is a fact "that makes the offense 'distinctively worse than the ordinary.' [Citations.]" (*People v. Black* (2007) 41 Cal.4th 799, 817.) Even if we assume that defendant is correct that several of the factors in aggravation listed in the probation report were inappropriate under the specific circumstances of this case, it is by no means an abuse of

6

discretion to consider defendant's abuse of Jane Doe distinctively worse than ordinary instances of spousal or cohabitant abuse. Under section 273.5, subdivision (a), the element of willful infliction of corporal injury resulting in a traumatic condition is satisfied when a "direct application of force" by the defendant on the victim causes injury. (*People v. Jackson* (2000) 77 Cal.App.4th 574, 577-578.) A single slap to the face resulting in even a minor injury suffices. (See *People v. Abrego* (1993) 21 Cal.App.4th 133, 137-138 [Fourth Dist., Div. Two].) Here, defendant choked Doe, resulting in bruising to her neck, and kicked and stomped her repeatedly, resulting in bruising to her arms and back. This goes far beyond what is necessary to constitute a violation of section 273.5, subdivision (a). A single valid aggravating factor may be deemed sufficient to outweigh any potentially mitigating factor. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) Accordingly, imposition of the upper term on the basis of that aggravating factor was not an abuse of discretion.

Defendant also contends that the court abused its discretion by failing to consider mitigating factors, including defendant's "dire financial and physical problems," his intoxication at the time of the offenses and his remorse, as expressed by his decision to plead guilty after seeing how upset Jane Doe was by the events and by having to testify. However, these potentially mitigating factors were brought to the court's attention, and in the absence of any explicit statement by the court to the contrary, it is assumed that the court properly exercised its legal duty to consider all possible mitigating and aggravating factors in determining the appropriate sentence. (*People v. Oberreuter* (1988) 204

7

Cal.App.3d 884, 888;[3] *People v. Kelley* (1997) 52 Cal.App.4th 568, 582.)  Defendant has failed to persuade us that it was an abuse of discretion to give greater weight to the aggravated nature of the offense in count 1 than to any or all of these mitigating factors.

2.

APPLYING SECTION 4019 SOLELY TO DEFENDANTS WHOSE OFFENSES WERE COMMITTED AFTER OCTOBER 1, 2011 DOES NOT VIOLATE EQUAL PROTECTION PRINCIPLES

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days.  (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)  Section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for performing assigned labor (§ 4019, subd. (b)), and for complying with applicable rules and regulations of the local facility (§ 4019, subd. (c)).  These presentence credits are collectively referred to as conduct credits.  (*People v. Dieck* (2009) 46 Cal.4th 934, 939.)

Section 4019 has been amended multiple times.  Before January 25, 2010, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody.  (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553, 4554.)  Effective January 25, 2010, the

---

[3] *People v. Oberreuter, supra*, 204 Cal.App.3d 884 was disapproved on an unrelated point in *People v. Walker* (1991) 54 Cal.3d 1013, 1022.  *People v. Walker* was itself overruled on the same ground, unrelated to the issue in this case, in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.

Legislature amended section 4019 to provide that prisoners, with some exceptions, earned one-for-one conduct credits, which is two days of conduct credit for every two days in custody. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50.) Effective September 28, 2010, the Legislature again amended section 4019. (Stats. 2010, ch. 426, §§ 1, 2, 5.) Subdivisions (b) and (g) restored the one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment.

Most recently, the Legislature amended section 4019 to provide for up to two days credit for each four-day period of confinement in local custody. (§ 4019, subds. (b) & (c).) This scheme reflects the Legislature's intent that if all days are earned under section 4019, a term of four days will be deemed to have been served for every two days spent in actual custody. (§ 4019, subd. (f).) This version of section 4019 became operative on October 1, 2011. (Stats. 2011, ch. 39, § 53.)

Defendant contends that applying the current version of section 4019 to defendants whose offenses were committed after October 1, 2011, but not to those, such as defendant, who were sentenced after October 1, 2011 for crimes committed before October 1, 2011, violates equal protection principles.[4]

In *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*), the California Supreme Court addressed contentions that the version of section 4019 effective on January 25, 2010,

---

[4] Defendant's offenses took place on or about August 10, 2011.

must be held to apply retroactively, in part because prospective application would violate the equal protection clauses of the state and federal Constitutions.  The court stated:**5**

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.  [Citation.]  Accordingly, "'[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.'"  [Citation.]  'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'  [Citation.]

". . . [T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response.  *That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows.*"  (*Brown*, *supra*, 54 Cal.4th at pp. 328–329, italics added.)

The court rejected the argument that its decision in *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*) required a contrary conclusion.  (*Brown*, *supra*, 54 Cal.4th at pp. 329–330.)  The version of section 4019 at issue in *Sage* authorized presentence conduct credit for misdemeanants who later served their sentence in county jail, but not for felons who

---

**5** The discussion of *Brown* which follows is excerpted, with minor alterations, from *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551-1552.

ultimately were sentenced to state prison. The *Sage* court found this unequal treatment violative of equal protection, as it found no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to" felons. (*Sage*, at p. 508.)

*Brown* acknowledged that one practical effect of *Sage* "was to extend presentence conduct credits retroactively to detainees who did not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them." (*Brown*, *supra*, 54 Cal.4th at p. 329.) Nevertheless, it declined to read *Sage* in such a way as to foreclose a conclusion "that prisoners serving time before and after incentives are announced are not similarly situated." (*Brown*, at p. 330.) *Brown* explained: "The unsigned lead opinion 'by the Court' in *Sage* does not mention the argument that conduct credits, by their nature, must apply prospectively to motivate good behavior. A brief allusion to that argument in a concurring and dissenting opinion [citation] went unacknowledged and unanswered in the lead opinion. As cases are not authority for propositions not considered [citation], we decline to read *Sage* for more than it expressly holds." (*Brown*, at p. 330.)

Finally, *Brown* rejected the notion the case before it was controlled by *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*), the case on which defendant relies in this case. In *Kapperman*, the court held that equal protection required retroactive application of a statute granting credit to felons for time served in local custody before sentencing and commitment to state prison, despite the fact that the statute was expressly prospective. (*Brown*, *supra*, 54 Cal.4th at p. 330.) *Brown* found *Kapperman*

11

distinguishable: "Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated." (*Brown*, at p. 330.)

In *People v. Ellis*, *supra*, 207 Cal.App.4th 1546, the court found *Brown*'s equal protection reasoning applicable to the current version of section 4019.[6] (*People v. Ellis*, *supra*, at p. 1552.) We agree with that court's analysis. Accordingly, we reject defendant's claim that he is entitled to additional conduct credits at the rate provided for by current section 4019.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.


We concur:

HOLLENHORST
        Acting P. J.

CODRINGTON
        J.

---

[6] In *People v. Lara* (2012) 54 Cal.4th 896, the California Supreme Court noted in a footnote that the same equal protection analysis applies to the current version of section 4019. (*People v. Lara*, *supra*, at p. 906, fn. 9.) This statement is dictum, in that no equal protection claim under the current version of section 4019 was raised in that case.