Filed 2/3/16  P. v. Moran CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B261316 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA091639) |
| v. | |
| ROBERT MORAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jared D. Moses, Judge.  Affirmed.

Jeffrey J. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Moran (defendant) appeals from his conviction resulting from the infliction of corporal injury on a cohabitant. His sole contention is that the trial court erred in refusing to instruct the jury on a lesser included offense. We find no merit to defendant's contention and conclude the trial court did not err. We affirm the judgment.

## BACKGROUND

In a four-count felony information, defendant was charged in count 1 with corporal injury to cohabitant Rowena D. (Rowena), in violation of Penal Code section 273.5, subdivision (a).[1] In counts 2 and 3, defendant was charged with criminal threats, in violation of section 422, subdivision (a); and in count 4, assault by means likely to produce great bodily injury, against "Kimberly Clark Cruz"[2] in violation of section 245, subdivision (a)(4). It was further alleged that defendant suffered two prior serious or violent felonies within the meaning of the "Three Strikes" law (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)), and pursuant to section 667, subdivision (a)(1), and that defendant had served five prior prison terms within the meaning of section 667.5, subdivision (b).

A jury convicted defendant of corporal injury to cohabitant (count 1), but acquitted him of counts 2 and 3. The jury convicted defendant of the lesser included offense of misdemeanor assault in violation of section 240, in count 4. After defendant waived his right to a jury trial on the prior conviction allegations, the trial court heard the evidence, found the allegations to be true, and denied the defense motion to dismiss the two prior strikes. On November 19, 2014, the trial court struck one of the prior prison term allegations, and sentenced defendant to a total term of 12 years in prison, comprised of the upper term of four years as to count 1, doubled to eight years as a second strike, plus four one-year enhancements due to the prior prison terms. As to count 4, a six-

---

[1]    All further statutory references are to the Penal Code, unless otherwise indicated.

[2]    During trial this witness identified himself as Kimberly Delacruz (Kimberly).

month concurrent jail term was imposed as well as mandatory fines and fees. Custody credit of 705 days was awarded.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Rowena testified that between 2011 and 2013, she and defendant were in a dating relationship, and they lived together in her apartment on Chevy Chase Boulevard. In November 2012, Rowena's four children lived with her. Son Kimberly and daughters Chesterly and Chatterly were adults, and her other son, Glendale D. (Glendale), was a teenager. On Thanksgiving day defendant and Kimberly had an altercation. Kimberly testified that he and his sisters wanted to visit their younger brother Glendale. Since Rowena was asleep on the couch, one of the daughters asked defendant for the key to Rowena's car. Defendant replied that they had no right to use the car as they did not contribute to its expense. Upset, Kimberly told defendant with some "attitude" to keep the car, and then went outside. As Kimberly stood near the mailboxes, defendant silently came up behind him, grabbed him by the neck and placed him in a tight choke hold, making it difficult for Kimberly to breathe. Defendant said Kimberly had "messed" with the wrong guy and in an angry, "demonic" voice, threatened to kill him and "smash" Kimberly, which Kimberly interpreted to be a threat to break all parts of his body. Kimberly believed defendant and tried to get out of his grasp, but defendant was strong and Kimberly was unable to get loose. Chatterly then attempted to pry defendant's arm away from Kimberly's neck, but defendant twisted her arm. Rowena and a neighbor then intervened, and Kimberly escaped defendant's grasp. As defendant continued to reach for Kimberly's neck, while threatening to smash him, Kimberly screamed for help. Kimberly believed defendant was going to kill him. Another neighbor called the police, who quickly arrived. Kimberly's neck was painful and scratched. He permanently moved out of Rowena's apartment that night, and later applied for a restraining order against defendant.

Rowena testified that in November 2013, as she and defendant were carrying a mattress, defendant tugged on the mattress too fast for her causing it to fall against her,

3

which twisted her arm and hand, causing pain to the underside of her right forearm and wrist. Later, while moving things from one room to the other, defendant dropped a bag of books on Rowena's foot. When Rowena complained of pain, defendant replied, "I don't care, mother fucker," and punched her with a closed fist on her right arm, just below her shoulder. Rowena ran to the front door and said, "That's why I don't want to stay with you because you always hurt me." Defendant asked, "What did you say? What did you say?" He looked angry, hit her behind her left ear, pulled her hair, and threw her to the floor of the living room, where she landed face down.

As Rowena was crying and shouting, defendant tried to quiet her so the neighbors would not call the police. He then turned her over, sat on her, while using one hand to cover her mouth with a blanket. Defendant placed his other hand on her neck, and choked her While doing these things, defendant angrily said, "I'll kill you. Don't make a noise." Rowena was scared, had a hard time breathing, and thought defendant would kill her. Rowena blacked out, and when she regained consciousness she was on the bed in her son's bedroom. Defendant was also there covering her mouth with the blanket in one hand, and choking her with his other hand as he said, "Stop, stop or I'll kill you." Rowena was afraid she would die. She tried to push defendant away, but again lost consciousness. She thought she lost consciousness three times altogether before defendant stopped the assault. Rowena estimated that the assaults lasted a total of 30 minutes. She thought she slept between two of the episodes as she had worked for 16 hours on her last shift and was very tired.

Rowena slept after the third episode. When she woke up, she went to the kitchen for water, and saw defendant sitting at the computer in the living room. She returned to bed, slept, and went to work at 11:00 p.m. She had difficulty dressing for work because of the pain. Rowena explained that she did not call 911 because defendant told her that before the police arrived he would kill her. She did not tell anyone at work because she was afraid of defendant. Following her shift the next morning, Rowena returned to the apartment, brushed her teeth, got her medical insurance card, told defendant she did not want to see him in her apartment, and went to a local hospital emergency room. When

4

Rowena told the attending nurse that her boyfriend hurt her, the police were called and an officer spoke with her.

Rowena testified that she suffered bruises under her lips and on her arms, a cut in her mouth, and redness on her neck. Photographs of Rowena's injuries were taken and admitted into evidence. Rowena explained that the bruise on her arm was caused when defendant punched her, that the redness near her neck and on her chin was inflicted when defendant strangled her and covered her mouth, and that the cut and bruise inside her mouth resulted from defendant having pressed on her mouth with the blanket.

Glendale Police Officer Selene Corrales spoke to Rowena in the hospital emergency room. Officer Corrales testified that she saw redness on Rowena's lower lip, redness and swelling on her right arm, and redness on both sides of her neck, especially the left side. The redness and swelling on her upper arm appeared to be a fresh injury, but the darker bruise near her shoulder seemed older. Officer Corrales went to the apartment with two other officers and spoke with defendant. When asked about the altercation with Rowena the night before, defendant claimed that it had only been an argument, and not physical. Defendant had scratch marks on his face, which he claimed were the result of a fall while moving a metal object.

**Defense evidence**

Stephanie Robles, who did not know Rowena or her children, testified that she saw people fighting on Thanksgiving day 2012, as she drove by their residence. She saw a boy open a door and slam it while defendant was behind him, and then run screaming until defendant grabbed him from behind in a bear hug. The boy tried to bite defendant in the crook of his arm as defendant held him.

Officer Ernesto Gaxiola testified that he went to Rowena's apartment on December 16, 2012, to investigate a restraining order violation. Defendant, Kimberly, Chesterly, and Chatterly were there and Rowena came home when called by the officer. Rowena said that defendant had permission to be there and that she was planning to change the locks because her children refused to return the key. Officer Gaxiola looked

up the restraining orders, found that though all parties had been ordered to stay away from one another, the children were not restrained from the home.

Officer Ryan Sandlin went to Rowena's apartment on November 22, 2012, spoke to Kimberly, and took photographs of him. The officer saw a superficial scratch on Kimberly's neck, but no redness.

Officer Sobolewski testified that he went to the apartment on April 1, 2013, reviewed the restraining order, and told Chesterly, Chatterly, and Glendale that they should not be around defendant. Rowena said that defendant had her permission to be there.

## DISCUSSION

Defendant contends that the trial court erred in refusing to instruct the jury on a lesser included offense to corporal injury to cohabitant, as requested by his counsel. In particular he argues that the trial court was obligated to instruct on the lesser included offense of misdemeanor battery upon a cohabitant.

A trial court is required to instruct only on lesser included offenses that are supported by substantial evidence. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) Substantial evidence in this context "is not merely '*any* evidence . . . no matter how weak' [citation], but rather '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Cruz* (2008) 44 Cal.4th 636, 664; see also *People v. Breverman* (1998) 19 Cal.4th 142, 154, 162.) Thus, there must be '"evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*. [Citations.]" (*People v. Memro* (1995) 11 Cal.4th 786, 871.) We apply a de novo standard of review to the obligation to instruct on an lesser included offense. (*People v. Licas, supra*, at p. 366.) In doing so, we consider the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) However, it is defendant's burden to show error by demonstrating substantial evidence of the lesser offense. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1458.)

6

As relevant here, section 273.5, subdivision (a), is committed by "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition upon a [cohabitant]." (§ 273.5, subd. (a) & (b)(2).)[3] Misdemeanor spousal battery, in violation of section 243, subdivision (e)(1), is a lesser included offense of section 273.5, subdivision (a). (*People v. Jackson* (2000) 77 Cal.App.4th 574, 580.) The greater offense consists of a battery by which the defendant inflicts physical injury; the lesser offense is a battery committed without physical injury. (*Id*. at p. 576.) It follows that the trial court was required to instruct as to the lesser offense only if there was substantial evidence that defendant did not inflict physical injury upon Rowena.

Defendant contends that such evidence may be found in Rowena's lack of credibility. He suggests that the instruction would have been justified if the jury had disbelieved Rowena's testimony entirely or if the jury had believed that her injuries occurred on different occasions or were not caused by defendant. Defendant argues that Rowena was not credible because her claimed fear was inconsistent with her actions, her time estimate was unrealistic, she did not call the police, did not report her injuries until the day after she worked a full shift, did not tell her coworkers, and she returned to her apartment and told defendant she did not want to see him there. Defendant also speculates that the verdicts acquitting defendant of the criminal threats and convicting him of the lesser included misdemeanor assault against Kimberly demonstrated that the jury did not find Rowena believable.

Defendant also suggests that Officer Corrales's testimony regarding her observations should be discounted because she did not document all of Rowena's injuries in her police report.

Finally, defendant argues: that Rowena's toothbrush could have caused the injury to the inside of her mouth; that the mattress might have caused the redness and swelling on her right arm when it fell; and that choking or strangulation would have left marks

---

[3]    As respondent notes, even a minor injury such as redness and soreness is considered an injury resulting in a "traumatic condition." (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771.)

7

higher on her throat, not at the base of her neck, near the collarbone, as they appear to defendant in the photographs. Defendant does not refer to any evidence in the record to support the suggestion that it was the mattress that caused injury to Rowena's upper arm where the redness and swelling was observed. Rowena testified that the mattress caused a twisting pain in her forearm, and did not indicate that a mark was left there or anywhere else on her arm. Nor does defendant refer to evidence that Rowena injured herself with her toothbrush, or any medical evidence suggesting that her cut gum was consistent with a tooth brushing injury. Finally, there was no medical or other testimony regarding the proper location of normal or genuine strangulation marks.

Defendant's arguments thus consist of speculation and a claim that two prosecution witnesses should not be believed. Defendant's speculation is not evidence. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 174.) "Speculation is an insufficient basis upon which to require the trial court to give an instruction on a lesser included offense." (*People v. Wilson* (1992) 3 Cal.4th 926, 942.) Further, disbelief of Rowena and Officer Corrales would leave an absence of evidence, not substantial evidence. "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury. [Citations.]" (*People v. Breverman, supra*, 19 Cal.4th at p. 162.) And when "there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions shall not be given. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1063.) A claim that prosecution witnesses were not credible is not proof, but merely "'an unexplainable rejection of the prosecution's evidence'. . . [Citation.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 514.)

As defendant has failed to identify substantial evidence in the record demonstrating that the use of force against Rowena did not cause physical injuries, we conclude that the trial court was not required to instruct on the lesser offense. We also agree with respondent that if the trial court had erred, the error would be harmless.

"The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at

8

pages 836-837 . . . . Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of. [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 867-868, fn. omitted.)

In an effort to demonstrate prejudice, defendant repeats the argument that the verdicts on other counts establish that the jury found Rowena less than credible. He argues that the jury's rejection of the charges of criminal threats and felony assault on Kimberly necessarily meant that the jury did not believe Rowena's testimony, including her testimony that defendant placed Kimberly in a choke hold.[4] Defendant's reasoning is flawed, as findings cannot be inferred from a general verdict. (See *United States v. Watts* (1997) 519 U.S. 148, 155; *In re Coley* (2012) 55 Cal.4th 524, 554.) Any attempt to discern the jurors' reasoning from the verdicts "would require speculation into what transpired in the jury room." (*Yeager v. United States* (2009) 557 U.S. 110, 122.)

Rather than engage in guesswork and speculation to determine whether a different result would have been probable, we consider "'whether the evidence supporting the existing judgment is . . . *relatively* strong, and the evidence supporting a different outcome is . . . *comparatively* weak . . . .' [Citations.]" (*People v. Rogers, supra*, 39 Cal.4th at p. 870.) When the evidence supporting the judgment is strong and the evidence supporting a lesser included offense is weak and insubstantial, the asserted error may be found harmless beyond a reasonable doubt. (*People v. Prince* (2007) 40 Cal.4th 1179, 1268.)

Here, the evidence that defendant willfully inflicted physical injury upon Rowena is strong. Rowena identified her injuries in photographs and testified that the bruise on her arm was caused when defendant punched her, that the redness near her neck and on

---

**4**     Rowena did not characterize defendant's conduct as a choke hold. She and Kimberly both testified that defendant held Kimberly from behind: Rowena testified that defendant held Kimberly's head while Kimberly testified that defendant held him by the neck, which he demonstrated for the jury. Rather it was the prosecutor who described the demonstrated maneuver as a choke hold to which the court agreed. Defendant's witness, Stephanie Robles, testified that she saw defendant grab Kimberly from behind in a bear hug, with the crook of his arm near Kimberly's mouth.

her chin was the result of defendant having strangled her and covered her mouth, and that the cut and bruise inside her mouth were inflicted when defendant pressed on her mouth with the blanket.  Officer Corrales testified that she observed the injuries.  On the other hand, the evidence of an assault without injury is relatively weak, as we found no substantial evidence to suggest that Rowena did not suffer the injuries, that the injuries were not inflicted by defendant on the day in question, or that Rowena was injured in some way other than by defendant's application of physical force against her.  We conclude beyond a reasonable doubt that the asserted error was harmless.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:



_____, P. J.
BOREN



_____, J.
HOFFSTADT