Filed 12/23/20  P. v. Stewart CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WHITNEY JEROME STEWART,<br><br>Defendant and Appellant. | F079546<br><br>(Super. Ct. No. F17907332)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephanie A. Mitchell and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Detjen, Acting P.J., Franson, J. and Peña, J.

Defendant Whitney Jerome Stewart stands convicted of five felonies, including two counts of inflicting corporal injury to a spouse, arising from his attack upon his wife. He contends on appeal that the trial court erred in failing to sua sponte instruct the jury on misdemeanor spousal battery as a lesser included offense to inflicting corporal injury on a spouse. The People argue the lesser included instruction was not required by the evidence and, in any event, any error in failing to instruct was harmless. We affirm.

## PROCEDURAL SUMMARY

On February 21, 2019, the Fresno County District Attorney filed a first amended information charging defendant with torture (Pen. Code, § 206;[1] count 1), aggravated mayhem (§ 205; count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), and two counts of inflicting corporal injury to a spouse (§ 273.5, subd. (a); counts 4 & 5). As to counts 3, 4, and 5, it was further alleged that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).

On March 14, 2019, the jury found defendant guilty as charged on counts 1, 3, 4 and 5. On count 2, the jury found defendant not guilty of aggravated mayhem, but guilty of the lesser included offense of mayhem. The jury further found true the personal infliction of great bodily injury allegations on counts 3, 4 and 5.

On June 2, 2019, the trial court sentenced defendant to life with the possibility of parole plus a determinate term of nine years as follows: on count 1, life with the possibility of parole; on count 3, four years (the aggravated term), plus a consecutive five-year enhancement for infliction of great bodily injury. The trial court also imposed, and stayed pursuant to section 654, terms on counts 2, 4 and 5 as follows: on count 2, eight years (the aggravated term); on count 4, four years (the aggravated term), plus a consecutive five-year enhancement for infliction of great bodily injury; and on count 5,

---

[1] All further statutory references are to the Penal Code.

four years (the aggravated term), plus a consecutive five-year enhancement for infliction of great bodily injury.

On June 27, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### Prosecution's Case

Defendant and Lisa Stewart[2] were married on February 14, 2017.[3]

On December 17, Lisa went to a company Christmas party with a female friend. While Lisa was at the party, defendant attempted to initiate a video call, but she did not respond. Defendant then sent Lisa text messages asking why she was not answering his call and telling her to " '[b]e home by 11:30. I'm the f**ken [*sic*] husband, period. Don't f*** with the king.' " She responded, "LMAO,"[4] as she was on her way home.

That night, Lisa returned home before 11:30 p.m., but defendant was not home. From home, she sent defendant a text message that read " 'This isn't a joke. Trust divorce is coming soon.' " She then went to bed because she had work in the morning. After she fell asleep, defendant returned home, began "cussing" and "raving," called her names, and accused her of cheating on him. It was apparent to her that defendant had been drinking alcohol. As defendant called Lisa names and shouted, he repeatedly pulled the covers off her and pushed her with both hands when she sat up in bed. Lisa tried to ignore defendant, told him to stop, and tried to pull the covers back over herself. Defendant's conduct continued for roughly 15 minutes. Lisa then threw a mostly empty plastic water bottle at defendant to "get his attention to just like stop hitting[ and] pushing" her. The water bottle did not hit defendant. Defendant continued calling Lisa

---

**2**   As defendant and the victim share the same last name, we refer to the victim by her first name to avoid confusion.

**3**   All further dates refer to the year 2017 unless otherwise stated.

**4**   "LMAO" is shorthand for " 'laughing my a** off.' "

3.

names and pushing and hitting her. He eventually pushed her hard enough that she fell off the bed onto her hands and knees. As she started to stand, defendant threw a roughly nine-inch-tall metal coffee cup at her, hitting her above her right eye and opening a cut.

Lisa began crying, got back onto the bed, and told defendant to stop and to call 911. Defendant continued swearing at her, but called 911, turned on the speaker phone, and said " 'B****, talk.' " While she was on the phone with the 911 dispatcher, defendant continued shoving Lisa and calling her names. He said " 'I don't give a f*** about your eye, b****.' " Then he made a cup with his hand, holding four fingers together and hit her hard in the eye. She then fell from the bed onto the floor. She tried to crawl under the bed, but defendant stood above her and continued to hit her in the eye.

After defendant stopped hitting Lisa, he tried to pull her pants and underwear off. She kicked at defendant, held on to her pants, and told him to stop. Defendant ripped off her pants and underwear; said " 'F*** you, bitch[,] I'm out of here[;]' and … left."

Lisa was taken by ambulance to the hospital. She required 10 stitches above and two stitches below her right eye. She was examined by an ophthalmologist who determined that the globe of her eye was deformed, and the cornea of her eye had folded in on itself and ruptured. She had two surgeries on her right eye. The first surgery required 35 stitches to restructure her eye. Her eye regained some form but never regained proper pressure and size. She had no chance of being able to see out of her right eye again and the eye caused her significant pain. The ophthalmologist therefore performed a second surgery, removing a portion of the damaged eye.

**Defense's Case**

Defendant testified that Lisa was his wife. The two met online. Defendant moved in with her about a month after they met. One month later, on February 14, they were married.

In October, defendant was arrested for an incident of domestic violence that he described as "only a verbal altercation."

4.

On December 17, Lisa went to a Christmas party and defendant went to a bar. At the bar, defendant had three shots of vodka and two 8-inch tall glasses of beer. He attempted a video call with Lisa, but she did not answer. He then sent her the text message telling her to be home by 11:30 p.m., because he did not believe that she was really at a Christmas party.

When defendant arrived home that night, he suspected Lisa was cheating on him because she declined his call and because several days before he heard a male voice when she was dropped off at home. Defendant was also upset because Lisa told him that she wanted a divorce. He did not curse at her, but he did ask who the man was. Defendant reached for or grabbed Lisa. He next remembered her throwing a water bottle at him. He testified that he thought, " 'Okay[,] [y]ou threw something, so I'm going to throw something,' and the coffee cup is the closest thing." He threw the metal coffee cup but did not intend to hit her. He just intended to scare her. He was surprised when the cup hit her; he thought " 'Oh, s***. What did I do?' "

Defendant then called 911 because he wanted to "[d]o whatever [he] could do to help her." As he held the phone to Lisa's face, she swung her hands and told him to get back. He tried to swat her hands away and told her to talk to the 911 dispatcher. After that, "everything was … a blur …." He "tussl[ed]" with Lisa over his phone and her phone, so it was possible that he hit her in the eye while doing so, but he did not intend to hit her. He did not say " 'I don't care about your f**ken [*sic*] eye." The next thing defendant remembered, the police arrested him.

## DISCUSSION

Defendant was convicted on counts 4 and 5 of infliction of corporal injury on a spouse. The prosecutor told the jury that count 4 was based on defendant striking Lisa with the thrown metal coffee cup, and count 5 was based on defendant striking Lisa in the eye with his hand.

5.

The parties agree, as do we, that misdemeanor battery on a spouse is a lesser included offense of felony infliction of corporal injury on a spouse. (See *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457.) However, the parties disagree regarding whether the lesser included instruction was required. Defendant contends that his testimony required sua sponte instruction on the lesser included instruction because the jury could have found he inflicted an "indirect" and "unintentional" injury by hitting Lisa with the thrown metal coffee cup to scare rather than hit her.[5] The People argue that defendant's position is legally erroneous because "the crime of inflicting corporal injury on a spouse does not require the defendant to directly touch the victim." Striking Lisa with the thrown metal coffee cup was sufficient to sustain the conviction on count 4. Next, the People argue that the jury's other findings indicate the jury disbelieved defendant's testimony that he inadvertently hit Lisa with the metal coffee cup, therefore any failure to instruct on the lesser included offense was harmless. We agree with the People on both accounts.

## A.    *Standard of Review*

" 'In criminal cases, even absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] " 'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " [Citation.] "[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]" ' [Citations.] In

---

[5]    Defendant does not differentiate between counts 4 and 5. He contends that the jury should have been given the lesser included instruction as to both offenses based on his testimony that all of Lisa's injuries were caused by the thrown metal coffee cup.

this regard, the testimony of a single witness … may suffice to require lesser included offense instructions.  [Citation.]  Courts must assess sufficiency of the evidence without evaluating the credibility of witnesses, for that is a task reserved for the jury.  [Citation.] The failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' " (*People v. Wyatt* (2012) 55 Cal.4th 694, 698.)

We review claims of instructional error de novo.  (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)  In doing so, we are required to review the evidentiary support for giving an instruction " 'in the light most favorable to the defendant' [citation] and … resolve doubts as to the sufficiency of the evidence to warrant instructions ' "in favor of the accused." ' " (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1483; see *People v. Enriquez* (1977) 19 Cal.3d 221, 228, overruled on other grounds in *People v. Cromer* (2001) 24 Cal.4th 889, 901.)

**B.      Analysis**

Section 273.5 prohibits willful infliction of corporal injury on a spouse resulting in a traumatic condition.  (§ 273.5, subd. (a); see CALCRIM No. 840.)  " '[T]raumatic condition' means a condition of the body, such as a wound, or external or internal injury … whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d).)  Misdemeanor spousal battery is a lesser included offense of infliction of corporal injury on a spouse that does not require a finding that the injury resulted in a traumatic condition.  (§ 243, subd. (e)(1); see CALCRIM No. 841.)

Defendant relies on *People v. Jackson* (2000) 77 Cal.App.4th 574, 580 (*Jackson*), for the proposition that a conviction for felony infliction of corporal injury on a spouse (§ 273.5, subd. (a)) requires proof of " 'direct application of force by the defendant.' " On the other hand, he contends that a defendant may be convicted of misdemeanor battery on a spouse where an injury was "the indirect result of the defendant's conduct, such as when a defendant chases a victim, who falls and … sustains injuries."  Defendant

7.

argues that by throwing the metal coffee cup he *indirectly*, rather than *directly*, applied force.  Therefore, based on his testimony that he never hit Lisa and that her injuries all resulted from the thrown metal coffee cup, the trial court was required to sua sponte instruct on the lesser included offense.

In *Jackson*, the defendant confronted his girlfriend outside their residence about her relationship with another man.  (*Jackson*, *supra*, 77 Cal.App.4th at pp. 575–576.)  He pushed her on her shoulder and head with his hand.  (*Id*. at p. 576.)  He later pushed her against a car.  (*Ibid*.)  After being pushed against the car, she " 'turned around, and [she] tripped over the curb of the sidewalk." (*Ibid*.)  She suffered abrasions to her left thigh and calf as a result.  (*Ibid*.)  The defendant was convicted at trial of infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)).  (*Jackson*, at pp. 575–576.)  On appeal, the People argued that even if the victim fell when fleeing, and the defendant's push or touch was not the direct cause of her fall, he still willfully inflicted injury by proximately causing the victim to fall.  (*Id*. at p. 578.)  The court of appeal rejected that argument. (*Ibid*.)  It explained, "that the Legislature intended, in section 273.5, to define as a felony a very particularized battery, i.e., one in which corporal injury is inflicted.  A battery, of course, 'cannot be accomplished without a touching of the victim.' " (*Ibid*.)  Therefore, it concluded that section 273.5 requires that "the corporal injury result[] from a direct application of force by the defendant upon the victim." (*Jackson*, at p. 578.)  Because the evidence did not prove that "the victim fell [(and therefore suffered a traumatic condition)] as a direct result of the blows inflicted by [the defendant]," the court found that the defendant did not willfully inflict corporal injury.  (*Id*. at p. 580.)  Accordingly, the court modified the judgment to reflect a conviction for the lesser included offense of battery against a cohabitant (§ 243, subd. (e)(1)).  (*Ibid*.)

*Jackson* cannot be fairly read for the proposition that a conviction for infliction of corporal injury cannot be sustained when a defendant strikes the victim with a thrown object.  The court did not address that issue.  The court merely drew a distinction between

8.

the victim falling in an attempt to escape the defendant—which would not sustain a conviction for infliction of corporal injury—and the defendant striking the victim and causing her to fall—which would sustain such a conviction. (*Jackson*, *supra*, 77 Cal.App.4th at pp. 578–580.) Nor does the *Jackson* court's recognition that infliction of corporal injury on a spouse is a "particularized battery" and that "battery … 'cannot be accomplished without a touching …' " (*Jackson*, at p. 578) suggest that section 273.5 requires a direct physical touching. It is well established that "touching" for purposes of battery can be accomplished by striking a person with a thrown object. (E.g., *People v. Romero and Self* (2015) 62 Cal.4th 1, 48 [the defendant committed battery when he squirted urine on a correctional officer]; *People v. Burgener* (2003) 29 Cal.4th 833, 868 [same]; *People v. Pinholster* (1992) 1 Cal.4th 865, 961 [same]; *People v. Duchon* (1958) 165 Cal.App.2d 690, 692–693 [the defendant committed battery when he struck the victim with thrown electric garden shears].) *Jackson* does not stand for a contrary proposition.

Here, in contrast to *Jackson*, Lisa did not suffer a traumatic condition in attempting to flee from defendant. Defendant threw a metal coffee cup that struck her. In doing so, he inflicted corporal injury, resulting in a traumatic condition. The jury could not have concluded that defendant's action in throwing the metal coffee cup constituted the lesser included offense of spousal battery as to counts 4 or 5. Instruction on the lesser included offense was not required.

Next, defendant contends that the "gravamen of corporal injury to a spouse[, unlike spousal battery,] is a direct application of force, not something which *accidentally* occurs during a domestic disturbance." (Italics added.) However, as the People correctly note, the state-of-mind requirement for sections 273.5 and 243 are the same—willfulness. (See CALCRIM Nos. 840, 841.) A defendant could not be convicted of either offense if he did not willfully strike the victim. On the facts of this case, where a forcefully thrown metal object struck the victim, if the willfulness requirement is met

9.

for spousal battery (because the defendant willfully hit the victim with the thrown object), it is also met for infliction of corporal injury to a spouse (because the defendant willfully inflicted a physical injury).  For that reason, defendant's testimony regarding his state of mind in committing the offense did not warrant instruction on the lesser included offense.

Next, the People argue that the jury necessarily rejected defendant's characterization of the injury to Lisa being the result of inadvertence or a freak accident so any failure to instruct on the lesser included offense was harmless error.

A trial court's failure to instruct the jury on a lesser included offense is reviewed under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 198.)  *Watson* asks whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*Watson*, at p. 836.)

We begin by noting, in finding defendant guilty of infliction of corporal injury on a spouse on count 4, the jury necessarily rejected defendant's contention that he did not willfully inflict harm on Lisa when he threw the metal coffee cup.

Next, on count 1, the jury found defendant guilty of torture.  As the jury was instructed, to find defendant guilty of torture, it was required to find that "defendant intended to cause cruel or extreme pain and suffering …."  (See CALCRIM No. 810.)  In finding defendant guilty of torture, the jury concluded that defendant intentionally struck Lisa for the purpose of causing pain and suffering.  That finding is inconsistent with defendant's testimony that he accidentally struck her with the metal coffee cup and never hit her in the eye with his hand.

On count 2, the jury found defendant guilty of mayhem (the lesser include offense of aggravated mayhem).  As the jury was instructed, to find defendant guilty of mayhem, it was required to find that defendant put out or injured Lisa's eye "maliciously" by "intentionally do[ing] a wrongful act or … act[ing] with the unlawful intent to annoy or

injure someone else." (See CALCRIM No. 801.) The jury therefore necessarily found that defendant acted intentionally in injuring Lisa's eye.

Based on the verdicts on counts 1, 2 and 4, we conclude the jury found that defendant intended to cause extreme pain and suffering, and it necessarily rejected defendant's testimony that he injured Lisa by accident and did not strike her with his hand. For that reason, it is not reasonably probable that the jury would have found defendant guilty of only the lesser included offense of spousal battery on counts 4 and 5.

## DISPOSITION

The judgment is affirmed.