**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAWID HABIBI, | No. 06-72111 |
| *Petitioner,* | Agency No. A045-696-373 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | ORDER AMENDING OPINION AND DENYING PETITION FOR PANEL REHEARING AND AMENDED OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 5, 2010*
Pasadena, California

Filed September 14, 2011
Amended December 8, 2011

Before: Raymond C. Fisher and Jay S. Bybee,
Circuit Judges, and Lyle E. Strom, Senior District Judge.**

Opinion by Judge Bybee

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Lyle E. Strom, Senior United States District Judge for the District of Nebraska, sitting by designation.

**COUNSEL**

Alex Lareybi, San Diego, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; Terri J. Scadron, Assistant Director; Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Washington D.C., for the respondent.

**ORDER**

The Opinion filed September 14, 2011, slip op. 17559, and appearing at 658 F.3d 977 (9th Cir. 2011), is amended as follows:

> At slip op. 17564, in the first sentence of the second full paragraph; 658 F.3d at 980, in the first sentence of the fourth full paragraph, change "It is undisputed

that Habibi's California domestic violence convic-
tion is a 'crime of violence.' " to "Habibi effectively
conceded before the IJ that his conviction for domes-
tic violence in California qualifies as a conviction for
a 'crime of violence.' "

With this amendment, the panel has voted to deny the peti-
tion for panel rehearing.

The petition for panel rehearing is DENIED.

Future petitions for rehearing will not be entertained.

---

## OPINION

BYBEE, Circuit Judge:

How many days are in a year? The answer is more compli-
cated than it may first appear. According to the Royal Obser-
vatory in Greenwich, the astronomically correct answer is
approximately 365.24237 days. *See Leap Years and Leap Sec-
onds*, Royal Observatory, http://www.nmm.ac.uk/explore/
astronomy-and-time/time-facts/leap-years (last visited June 4,
2011). Since it would be impractical for our calendars to add
0.24237 days at the end of each year, we make up the differ-
ence by adding an extra day, February 29, every fourth year,
which is known as "leap year." *Id.* This would solve the prob-
lem entirely if a natural year were actually 365.25 days. How-
ever, because the actual figure is slightly less at 365.24237
days, adding a full day every four years ends up overcompen-
sating. *Id.* To correct this, the Gregorian calendar approxi-
mates the natural year at 365.2425 days. *See Leap Years*,
Naval Oceanography Portal, http://www.usno.navy.mil/
USNO/astronomical-applications/astronomical-information-
center/leap-years (last visited June 4, 2011). As a result, we
omit leap year every 100 years, in years ending in "00,"

*except* once every 400 years. *Id.* Therefore, while the years 1600 and 2000 were leap years, the years 1700, 1800, and 1900 were not. *Id.*

Despite its precision, the astronomical definition of a year does not help us answer the question of how long "one year" is for purposes of 8 U.S.C. § 1101(a)(43)(F). That subsection provides that an alien who commits "a crime of violence . . . for which the term of imprisonment [is] at least one year" has committed an "aggravated felony." The immigration consequences of having committed an "aggravated felony" are substantial—for instance, if a removable alien is a lawful permanent resident ("LPR"), he becomes ineligible to apply for cancellation of removal. *Id.* § 1229b(a)(3). Disregarding the intricacies of astronomy, the Board of Immigration Appeals ("BIA") defines "one year" as 365 days, regardless of leap years, for purposes of § 1101(a)(43)(F). Because taking the intricacies of astronomy into account would needlessly complicate this area of the law, we adopt the BIA's definition.

I

On November 3, 1999, petitioner Jawid Habibi ("Habibi"), an LPR, was convicted of Battery of a Current or Former Significant Other, a misdemeanor under California Penal Code § 243(e)(1). Habibi received a 365-day suspended sentence to be served through the year 2000, which was a leap year. The Department of Homeland Security ("DHS") subsequently served Habibi with a Notice to Appear ("NTA"), charging that his California conviction made him removable under 8 U.S.C. § 1227(a)(2)(E)(i), as an alien convicted of a crime of domestic violence.

Habibi requested cancellation of removal. An immigration judge ("IJ") concluded after a hearing that Habibi was not eligible for cancellation of removal because his domestic violence conviction constituted an "aggravated felony" under § 1101(a)(43)(F). Habibi argued that because "aggravated fel-

ony" is defined as a "crime of violence . . . for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(F), and because his 365-day sentence was completed during a leap year, which was 366 days long, his California conviction did not qualify as an "aggravated felony." The IJ rejected this argument, noting that "it is well settled that . . . 365 days . . . would be the equivalent of a legal year."

The BIA affirmed and adopted the IJ's decision. In addressing Habibi's argument that serving his 365-day sentence in a leap year made him eligible for cancellation of removal, the BIA noted that in *Matsuk v. INS*, 247 F.3d 999 (9th Cir. 2001), *overruled on other grounds*, *Delgado v. Holder*, ___ F.3d ___, No. 03-74442, 2011 WL 3633695 (9th Cir. Aug. 19, 2011) (en banc), "the Ninth Circuit approved of the Board's interpretation of one year as commonly meaning 365 days for purposes of finding that an alien's sentence to 365 days rendered his conviction an aggravated felony." The BIA further observed that adopting Habibi's position would lead "to an inconsistent and absurd result, subjecting aliens to a different set of rules depending on whether or not they were sentenced in a leap year."

Habibi timely petitioned for review. We review the BIA's conclusions of law de novo. *See*, *e.g.*, *Chavez-Perez v. Ashcroft*, 386 F.3d 1284, 1287 (9th Cir. 2004); *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003).

II

**[1]** Under 8 U.S.C. § 1229b(a)(3), an LPR convicted of an "aggravated felony" is ineligible for cancellation of removal. "Aggravated felony" is defined by 8 U.S.C. § 1101(a)(43)(F) as including a "crime of violence . . . for which the term of imprisonment [is] at least one year."

Habibi effectively conceded before the IJ that his conviction for domestic violence in California qualifies as a convic-

tion for a 'crime of violence.' He contends, however, that because he completed his 365-day sentence during a leap year, his offense does not qualify as a crime "for which the term of imprisonment [is] at least one year," as required by 8 U.S.C. § 1101(a)(43)(F).

**[2]** Habibi's argument is controlled by our decision in *Matsuk*. In that case, the government sought removal of an alien who had several state convictions for assault, each of which carried a sentence of 365 days. Matsuk argued that these convictions were not for crimes "for which the term of imprisonment [is] at least one year" because a "natural or lunar" year is actually composed of 365 days plus some hours. 247 F.3d at 1000-02. The BIA countered that "a calendar year was a more appropriate measure and . . . that a calendar year is commonly thought of as 365 days." *Id.* at 1002. We held that the BIA's interpretation of one year as equaling 365 days was rational and entitled to deference.[1] *Id.* ("Because the BIA's interpretation is entirely rational—and certainly not demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute—the BIA's interpretation should not be disturbed.") (internal quotation marks omitted); *see also United States v. Gonzalez-Tamariz*, 310 F.3d 1168, 1171 (9th Cir. 2002).

Although Habibi's leap-year sentence presents an interesting twist, we see no need to revisit *Matsuk*. Although the BIA's definition, contained in an unpublished order, is not entitled to *Chevron* deference, *see Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc) ("We have not accorded *Chevron* deference to the [BIA]'s unpub-

---

[1]Although *Matsuk* did not cite *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), it appears to have reviewed the BIA's decision under a framework of *Chevron* deference. *Matsuk* was decided before our decision in *Marmolejo-Campos* held that unpublished BIA orders were not entitled to *Chevron* deference, but only entitled to *Skidmore* deference.

lished decisions . . . because they do not bind future parties."); *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012-14 (9th Cir. 2006) ("Because unpublished decisions lack precedential value, this court . . . ha[s] declined to give them deferential treatment under *Chevron*.") (quotation marks and citation omitted), it is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Marmolejo-Campos*, 558 F.3d at 909 ("[W]e have applied *Skidmore* when reviewing [the BIA's] unpublished orders."). Under *Skidmore* we defer to the BIA's interpretation based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140.

**[3]** In the context of § 1101(a)(43), the BIA correctly concluded that the phrase "term of imprisonment [of] at least one year" means a sentence of at least 365 days, regardless of whether any part of the sentence was served during a leap year. Adopting Habibi's position that "one year" should mean 366 days when the sentence was served in a leap year would lead to unjust and absurd results. It would mean that an alien's status as an aggravated felon—and his eligibility for removal or cancellation thereof—would turn on a fortuity, the particular day in a particular calendar year in which he began serving his sentence. If, for example, Habibi had started serving his 365-day sentence on February 15, 2000, then, according to Habibi, he would be eligible for cancellation of removal, because his sentence would have encompassed February 29, 2000. If, on the other hand, his sentence had started a month later, on March 15, 2000, then he would not be eligible for cancellation of removal, since 2001 was not a leap year, and his sentence would not have included a February 29. There is no indication that Congress intended for the definition of "aggravated felony" to shift depending on what day an alien happened to start serving his sentence. Indeed, the statute uses the phrase "term of imprisonment," which suggests an inquiry into the absolute value of the term, rather than an inquiry into

when the term began and when it ended. The BIA's position —which effectively classifies as aggravated felons all aliens sentenced to at least a 365-day prison term—is the most logical reading of the statute and results in consistent outcomes.

Habibi nonetheless points to our decision in *Lagandaon v. Ashcroft*, 383 F.3d 983, 985 (9th Cir. 2004), that held, for purposes of a different provision of the Immigration and Naturalization Act ("INA"), that "a year, other than a leap year, is 365 days." In that case, an alien petitioned for cancellation of removal on grounds set out in 8 U.S.C. § 1229b(b)(1). To be eligible for cancellation of removal under that particular provision, the petitioner had to have "been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1). For purposes of calculating whether a petitioner had met the ten-year physical presence requirement, we held that one year equals 365 days, except in leap years, when it equals 366 days. *Lagandaon*, 383 F.3d at 985.

*Lagandaon* is inapplicable to Habibi's case. Not only were we interpreting a different statutory provision in *Lagandaon*,[2] but the language there concerned how to calculate "a 'year' . . . in terms of dates." Looking to *Black's Law Dictionary*, we observed that a year is defined as " '[t]welve calendar months beginning January 1 and ending December 31,' or as '[t]welve calendar months beginning at any point.' " *Id.* at 991 (quoting *Black's Law Dictionary* 1609 (7th ed. 1999)). The method we adopted in *Lagandaon* is useful for calculating terms of years from a particular starting date. *See id.* (quoting *Bailey v. Faux*, 704 F. Supp. 1051, 1053 (D. Utah 1989) ("[A] calendar method of calculating a one year period from any given date results in termination of that period in the next calendar year on the date one day prior to the starting date.")); *see also Bosch v. Town Pump, Inc.*, 102 P.3d 32, 33-34 (Mont. 2004). But "twelve calendar months" is not the

---

[2]*Lagandaon* did not refer to our prior opinion in *Matsuk*.

only measure of a "year." The definition we quoted from *Black's* was the first definition; the second is "[a] consecutive 365-day period beginning at any point." *Black's Law Dictionary* 1754 (9th ed. 2009).[3]

*Lagandaon*'s focus on calendar years was reasonable in the context in which we decided it. We held in *Lagandaon* that if an alien arrived in the United States on February 1, 2010, he might become eligible for cancellation of removal on January 31, 2020. *See* 383 F.3d at 993. If we had held in *Lagandaon* that one year was 365 days regardless of leap years, we would have needlessly complicated the calculation by requiring aliens, the BIA, and us to calculate the number of leap years within the applicable ten year period. For example, if the alien had arrived on February 1, 2010, 3,650 days (365 days/year times 10 years) would elapse by *January 29*, 2020. On the other hand, if the alien had arrived on February 1, 2012, the applicable date would be *January 28*, 2022. Alternatively, if the alien had arrived on February 1, 2097, the date after which 3,650 days would elapse would be *January 30*, 2107. This awkward discrepancy exists because within any given ten-year period, there will be anywhere between one and three leap years.[4] Defining a year to be 365 days except in leap years therefore made sense for purposes of the provision at issue in *Lagandaon* because we were describing a "continuous period of not less than 10 years."

---

[3]Before Professor Garner began his massive effort to rewrite *Black's*, the entry for "year" noted that "year" could be "astronomical, ecclesiastical, or regnal," and that "[w]hen the period of a 'year' is named, a calendar year is generally intended, but the subject-matter or context of statute or contract in which the term is found or to which it relates may alter its meaning." *Black's Law Dictionary* 1790 (Rev. 4th ed. 1968).

[4]For instance, between 1999 and 2009, there were three leap years: 2000, 2004, and 2008. Between 2001 and 2011, there were two leap years: 2004 and 2008. Between 2097 and 2107, there will only be one leap year: 2104.

On the other hand, § 1101(a)(43)(F) is not about calculating calendar periods, but about defining how many days a sentence must be to be a sentence of "at least one year." Further, as discussed above, importing the definition of a year from *Lagandaon* when reading § 1101(a)(43)(F) would cause the definition of "aggravated felony" to shift depending on whether the alien managed to serve some part of his sentence during a leap year, and when during the leap year he served his sentence. *Lagandaon's* definition of a year made sense for purposes of § 1229b(b)(1), but it makes little sense for purposes of § 1101(a)(43)(F).

**[4]** We therefore hold that the BIA was correct to conclude that, for purposes of § 1101(a)(43)(F), a sentence of 365 days qualifies as a "term of imprisonment [of] at least one year," even when the sentence was served in whole or in part during a leap year.

## III

**[5]** Habibi next argues that because his underlying domestic violence conviction is classified as a misdemeanor under California law, it does not qualify as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(E)(i). He concedes that our precedents hold that whether a state classifies an offense as a "misdemeanor" is irrelevant to determining whether it is an "aggravated felony" for purposes of federal law. *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1210 (9th Cir. 2002) (en banc) ("[I]t is irrelevant whether the state labels the underlying crime 'misdemeanor' or 'felony.' . . . . The relevant question is whether the crime meets the definition of an 'aggravated felony' under federal sentencing law."), *superseded on other grounds by* U.S.S.G. § 2L1.2 cmt. n.4 (2002). He nonetheless argues that because the Third Circuit held otherwise in *Steele v. Blackman*, 236 F.3d 130, 135-37 (3d Cir. 2001), the differing application of the law in different circuits violates his equal protection rights. No court has ever held that the mere existence of a circuit split on an issue of statu-

tory interpretation violates due process or equal protection, and we decline Habibi's invitation to do so here.

## IV

**[6]** In proceedings before the IJ, Habibi also sought a continuance to permit him to apply for asylum and adjustment of status. The IJ denied the motion because this would require Habibi to apply for an INA § 212(h) waiver, 8 U.S.C. § 1182(h), and LPRs convicted of aggravated felonies are not eligible for § 212(h) waivers. Habibi argues that his equal protection rights are violated by the fact that, as an LPR, he is statutorily ineligible for a § 212(h) waiver, although a non-LPR alien might be eligible.

We have previously held that Congress has a rational basis for excluding LPRs from eligibility for § 212(h) waivers. In *Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002), we observed that because "LPRs enjoy substantial rights and privileges not shared by other aliens, . . . it is arguably proper to hold them to a higher standard and level of responsibility." *Id.* at 957-58 (internal quotation marks and brackets omitted). Accordingly, we held that Congress does not violate equal protection by denying LPRs the opportunity to apply for a § 212(h) waiver. Because *Taniguchi* is controlling, we must reject Habibi's equal protection argument.

## V

All of Habibi's arguments for cancellation of removal have been addressed by our precedents. None have been resolved in his favor. Accordingly, we must deny Habibi's petition for review.

PETITION DENIED.