Filed 3/8/23; Certified for Publication 3/22/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B318353 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA143872) |
| v. | |
| CESAR ALFREDO VILLALBA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, LaRonda J. McCoy, Judge. Reversed and remanded.

Douglas Jalaie for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Cesar Alfredo Villalba (defendant) appeals the denial of his motion brought pursuant to Penal Code section 1473.7, subdivision (a)[1] to withdraw his 2017 no contest plea to a violation of section 273.5 and to vacate his conviction. He contends that he did not meaningfully understand the actual adverse immigration consequences of the conviction because his counsel misadvised him, and the sentencing court gave a contradictory advisement. He also contends that he would not have agreed to the plea if he had understood, and thus the trial court erred in denying the motion. As we find that defendant's undisputed evidence demonstrated a reasonable probability that if he had been properly advised of the immigration consequences of his plea, he would not have pled no contest to an offense requiring mandatory deportation, we reverse the order and remand with directions to the trial court to grant the motion and vacate the conviction pursuant to section 1473.7, subdivision (e).

## BACKGROUND

### Defendant's plea and conviction

On January 26, 2017, defendant was charged by felony complaint with inflicting corporal injury on his spouse, in violation of section 273.5, subdivision (a). The complaint also alleged pursuant to section 12022.7, subdivision (c) that defendant inflicted great bodily injury on the victim. The probation report explained that defendant and his wife, Jessica Martinez began arguing while dining and intoxicated. Arguing in the parking lot of the restaurant, defendant punched his wife in the face twice and threw her to the pavement, where she struck

---

[1] All further unattributed code sections are to the Penal Code unless otherwise stated.

her face and head.  Another couple intervened, and police were called.  Martinez was treated at the hospital and released.  She told the probation officer that she and defendant had been together for 14 years, married for three, and together they were raising one child in common and her three children.  She denied any prior instances of domestic violence or other issues in their relationship and did not want a restraining order.

Three months later, on April 26, 2017, defendant waived preliminary hearing and negotiated a plea agreement under which he would plead no contest to the charge and admit the special allegation in exchange for a suspended imposition of sentence, conditioned upon 365 days in county jail, five years of felony probation, a protective order, 52 weeks of domestic violence classes and fines.  After questions relating to defendant's understanding of the terms and conditions, the court asked defendant, ". . . I don't know if this applies to you or not.  I don't need to know.  I just need to advise you that if you're not a citizen of the United States, your plea of no contest will result in your deportation, denial of naturalization, denial of citizenship, denial of reentry into the country."  The court then asked, "Do you understand that?" and defendant replied, "Yes, Your Honor."

The trial court also asked about the plea form that defendant had initialed and signed.  Defendant was asked whether he had signed and dated the form and initialed the boxes, and whether he had read, understood, considered and gone over with his attorney each of the constitutional rights that he would be waiving and the consequences of his plea.  Defendant agreed that he had.  The trial court accepted the plea, sentenced defendant on June 16, 2017, as agreed and struck the great bodily injury allegation.

3

In March 2021, defendant's request to modify probation and for early termination was denied, and in November 2021, his request for a nunc pro tunc order reducing the jail time imposed to 364 days was denied.[2]

**Section 1473.7 and related legal principles**

In 2018, the Legislature passed Assembly Bill No. 2867 (2017-2018 Reg. Sess.), amending section 1473.7 effective January 1, 2019, and declaring that section 1473.7 "shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code." (Stats. 2018, ch. 825, § 1(c).) Among other things, section 1016.2 provides:

> "(g) The immigration consequences of criminal convictions have a particularly strong impact in California. One out of every four persons living in the state is foreign-born. One out of every two children lives in a household headed by at least one foreign-born person. The majority of these children are United States citizens. It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years. Once a

---

[2] "[W]hen, as in the present case, the parties negotiate a plea agreement that, among other express provisions, grants probation incorporating and conditioned upon the service of a specified jail term, the resulting term of incarceration is not—and may not be treated as—a mere standard condition of probation. Rather, the term of incarceration is in the nature of a condition precedent to, and constitutes a material term of, the parties' agreement. As such, the jail term is not subject to subsequent modification without the consent of *both* parties, and cannot be altered solely on the basis of the trial court's general statutory authority to modify probation during the probationary period." (*People v. Segura* (2008) 44 Cal.4th 921, 935, fn. omitted.)

4

person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return.

"(h) It is the intent of the Legislature to codify *Padilla v. Kentucky* [(2010) 559 U.S. 356] and related California case law and to encourage the growth of such case law in furtherance of justice and the findings and declarations of this section."  (Italics added.)

Accordingly, "defense counsel [must] provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases [and] must investigate and advise regarding the immigration consequences of the available dispositions . . . ."  (§ 1016.2, subd. (a).)

As our Supreme Court stated in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), *Padilla* explained that "[b]ecause the prospect of deportation 'is an integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges [citation], both the Legislature and the courts have sought to ensure these defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient."  (*Vivar, supra*, at p. 516, quoting and citing inter alia, *Padilla v. Padilla, supra*, 559 U.S. at pp. 360, 364 (*Padilla*).)

As relevant here, section 1473.7 authorizes a defendant who is no longer in criminal custody to file a motion to vacate a conviction or sentence where "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or

knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)

The statute provides that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (§ 1473.7, subd. (a)(1).)  Thus, although the motion to vacate may be based on errors by counsel, the moving party need not demonstrate ineffective assistance under the Sixth Amendment principles enunciated in *Strickland v. Washington* (1984) 466 U.S. 668, 688.  (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008 (*Camacho*).)

Section 1473.7 requires a court to "vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.'  (§ 1473.7, subds. (e)(1), (a)(1).) . . .  [Citation.]  If the motion is meritorious, 'the court shall allow the moving party to withdraw the plea.'  (*Id*., subd. (e)(3).)"  (*Vivar, supra*, 11 Cal.5th at p. 523.)

**Immigration consequences of a section 273.5 conviction**

Under federal law, a noncitizen convicted of a crime of domestic violence is deportable.  (8 U.S.C. § 1227, (a)(2)(E)(i).)  A crime of violence for which the term of imprisonment is at least one year is an "aggravated felony."  (8 U.S.C. § 1101(a)(43)(F).)  A noncitizen who is convicted of an aggravated felony at any time after admission is conclusively presumed deportable and is subject to mandatory removal.  (8 U.S.C. § 1228(c); see *id*., § 1227(a)(2)(A)(iii).)  An aggravated felony conviction renders a noncitizen "ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country.  See [8 U.S.C. §] 1229b(a)(3), (b)(1)(C).  Accordingly,

6

removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here." (*Sessions v. Dimaya* (2018) 584 U.S. __ [138 S.Ct. 1204, 1210-1211].) A violation of Penal Code section 273.5, subdivision (a) is a crime of violence. (*Banuelos-Ayon v. Holder* (9th Cir. 2010) 611 F.3d 1080, 1083, 1085.) It is thus an "aggravated felony" if it carries term of imprisonment of at least one year. (8 U.S.C. § 1101(a)(43)(F).)

As relevant here, section 273.5, subdivision (a) provides: "Any person who willfully inflicts corporal injury resulting in a traumatic condition upon [the offender's spouse] is guilty of a felony [which is punishable] by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year . . . ." Section 273.5, subdivision (a) is known as a wobbler. (*People v. Jackson* (2000) 77 Cal.App.4th 574, 576.) It is thus punishable either as a felony or a misdemeanor in the discretion of the sentencing court. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 288.) Where an offense is a wobbler and the court suspends imposition of sentence and grants probation, as the sentencing court did here, the offense is deemed a felony unless and until the court subsequently reduces it to a misdemeanor. (*People v. Tran* (2015) 242 Cal.App.4th 877, 890.) If not reduced, the offense remains "a felony for all purposes until judgment or sentence and if no judgment is pronounced it remains a felony [citations]." (*People v. Esparza* (1967) 253 Cal.App.2d 362, 364-365.)

However, "whether a state classifies an offense as a 'misdemeanor' is irrelevant to determining whether it is an 'aggravated felony' for purposes of federal law." (*Habibi v. Holder* (9th Cir. 2011) 673 F.3d 1082, 1088.) For a crime of violence the determinative factor is "'the term of imprisonment [of] at least

7

one year.' 8 U.S.C. § 1101(a)(43)(F)." (*Arellano Hernandez v. Lynch* (9th Cir. 2016) 831 F.3d 1127, 1132.)[3] Moreover, it does not matter that defendant was not sentenced to prison or even that no sentence was imposed, as "'[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.' [8 U.S.C.] § 1101(a)(48)(B)." (*Arellano Hernandez*, at pp. 1132-1133.) Thus, a suspended imposition of sentence and a grant of probation conditioned upon one year (365 days) in jail will render a violent crime an aggravated felony.

**Defendant's section 1473.7 motion**[4]

In January 2022, defendant filed a motion under section 1473.7 to have his conviction vacated. In support of the motion, defendant submitted his declaration as well as the declarations of Attorney Erick Munoz, who represented him at the time of his plea, and an immigration attorney regarding federal law.[5]

---

[3] "[F]or purposes of [8U.S.C.] § 1101(a)(43)(F), a sentence of 365 days qualifies as a 'term of imprisonment [of] at least one year' . . . ." (*Habibi v. Holder, supra*, 673 F.3d at p. 1088.)

[4] The motion was heard by the Honorable LaRonda McCoy, who was not the judge who presided over defendant's 2017 plea and conviction.

[5] Munoz's declaration was signed, but not under penalty of perjury. The clerk's transcript contains page 1 of defendant's declaration, which ends with paragraph 6 at the bottom of the page. There is no page 2. The People indicate that the signature page with defendant's verification was omitted from the record. If it was not before the trial court, the prosecutor did not object

Attached exhibits included letters of support from his wife, a United States citizen, his stepdaughters, in-laws, a niece, friends, and employer. Also attached were his marriage certificate, the birth certificates of his United States citizen children and stepchildren, and other exhibits documenting his longtime residence in the United States, including that he had become a lawful permanent resident of the United States in 2014.

In his declaration defendant averred that he was born in Mexico in 1979, came to the United States as a child with his parents in 1992, grew up in Los Angeles, met his wife in 2003, and they raised six children together.[6] Defendant declared he had complied with all conditions of probation, including fees and all classes, and that he was detained by Immigration and Customs Enforcement (ICE), summoned to deportation proceedings due to conviction of an aggravated felony, and was currently incarcerated at a detention facility in Aldelato, California. Defendant described his plea experience as follows:

"On April 26, 2017, my attorney Erick Munoz brought a plea deal offer from the District Attorney

---

and thereby waived the irregularity. (See *People v. Johnson* (2013) 222 Cal.App.4th 486, 493.) In any event, the trial court did not deny the motion for this reason, nor even mention the problem. Motion counsel told the court that he had expected to offer testimony at a later scheduled hearing on the section 1473.7 motion and that this hearing, which took place just one week after the motion was filed, was a hearing on a request for nunc pro tunc resentencing. The trial court disagreed and ruled on the 1473.7 motion without hearing testimony. Defendant does not assign error to the court's refusal to set the matter for a later hearing.

[6] In her letter of support Martinez stated that their six children were two of his, three of hers, and one of theirs together.

9

for me to plead no contest to the charge of domestic violence and serve 364 days [in] county jail. Mr. Munoz took me into the hallway outside the courtroom and had me sign and initial a document regarding my plea. Mr. Munoz had me sign a part of the form labeled, 'immigration consequences.' I did not read that portion, but I asked Mr. Munoz if my green card would be affected by the plea. Mr. Munoz told me that if I completed the probation and reduced the felony to a misdemeanor, then I could keep my green card. Mr. Munoz did not tell me that the felony domestic violence would be an aggravated felony and result in mandatory deportation. When we got into the courtroom with the Judge and the Prosecutor, I heard them say the sentence of 365 days.

". . . Had I known that my guilty plea would certainly render me deported from the United States, I would have chosen to take my chances with a jury verdict or seek an alternate plea deal at the least. I had my wife and children and my right to be in the United States permanently. I would have risked a jury verdict [to] save myself from deportation. I know no other life than my life here in the United States. I would have taken additional jail or prison time in order to avoid deportation as well. I am willing to take additional time of incarceration even now to avoid deportation."

Defendant declared that his only prior arrest was for driving under the influence of alcohol.

In his declaration, Attorney Munoz stated that he did not recall the case, but it was "likely possible" that he told defendant that immigration consequences would be avoided with a sentence of 364 days or with a reduction to a misdemeanor after completion of probation, and that it was also "likely possible" that

he did not request alternate pleas such as violations of section 136.1 or 236.

The prosecutor did not oppose the motion, which was argued and denied on January 21, 2022. At the hearing, the prosecutor told the court that her supervisor had no objection to reducing the time in custody to 364 days (as defendant had unsuccessfully requested in November 2021).[7] Defense counsel clarified that the motion was to vacate the judgment under section 1473.7, and in the ensuing discussion with the court, counsel explained Munoz's erroneous advice, defendant's misunderstanding, and his statement that he would not have taken the plea bargain. During the discussion the court stated: "Counsel, I think we're getting beyond the scope of what this motion is about. I understand that there are reasonable alternatives that would not lead to deportation. I get all of that. The only . . . issue before the court is what the advisements were." The court continued: "If you're talking about ineffective assistance of counsel, that's a different issue. That's not a 1473.7. The question is, was he properly advised? And the answer is, yes, he was properly advised."[8]

---

[7]    See footnote 2, *ante*, and *People v. Segura, supra*, 44 Cal.4th at page 935.

[8]    When it denied the motion, the trial court was required to specify the basis for its conclusion (§ 1473.7, subd. (e)(4)). Here the trial court's basis was unclear. Early in the hearing the court stated, "The only issue the court is focused on is what the attorney said, what his understanding was, what the court advised, et cetera." However, we discern no focus by the trial court on defendant's understanding. We infer from the court's comments that its ruling was based upon a finding that

The prosecutor did not oppose the motion. Nevertheless, the motion was denied by the court.[9]

Defendant filed a timely notice of appeal.

## DISCUSSION

## I.    Timeliness of motion

Defendant was still on probation (until June 15, 2022) when he filed his motion in January 2022. The People's sole contention in opposition to this appeal is that the order denying the motion must be affirmed because it was prematurely filed when defendant was still on probation, as a motion under section 1473.7 is available only to a person who is no longer in criminal custody. (See § 1473.7, subd. (a).) The People rely on *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 220-221, and *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1130-1131, which held that a person on parole or probation for the subject offense is in "constructive custody" for purposes of a section 1473.7 motion. The People suggest that these two cases require affirming the denial of defendant's premature motion regardless of the lower court's reasoning. However, in the cited cases the appellate courts reviewed the denial of the premature motions on the merits, as the lower courts had done. (*People v. De Jesus, supra*, at pp. 1132-1137; *People v. Cruz-Lopez, supra*, at pp. 222-224.) Therefore we do not read them as providing authority for

---

defendant had been properly advised by counsel and the court at the time of the plea.

[9]      "If the prosecution has no objection to the motion, the court may grant the motion to vacate the conviction or sentence without a hearing." (§ 1473.7, subd. (d).)

12

affirming the denial of the motion based solely on its premature filing.

The trial court here heard the motion and decided it on the merits without mention of the time requirement.  Nor did the prosecutor object to the motion or raise any issue of timeliness. The People have not cited any authority indicating that section 1473.7, subdivision (a) limited the trial court's jurisdiction, and as defendant was still on probation, the trial court did not lack fundamental jurisdiction over the subject matter and the parties. (*People v. Chavez* (2018) 4 Cal.5th 771, 780; see § 1203.2.)  "When a trial court fails to act within the manner prescribed by [statute], it is said to have taken an ordinary act in excess of jurisdiction.  [Citation.]  Such 'ordinary' jurisdiction, unlike fundamental jurisdiction, can be conferred by the parties' decisions—such as a decision not to object to any perceived deficiency—and so is subject to defenses like estoppel, waiver, and consent."  (*Chavez*, at p. 780.)

"Whether the party should be estopped depends on a weighing of equities in the particular case, the effect of estoppel on the functioning of the courts, and considerations of public policy."  (*People v. Ford* (2015) 61 Cal.4th 282, 287, citing *In re Griffin* (1967) 67 Cal.2d 343, 348.)  When the Legislature amended section 1473.7, it "explicitly stated its intended purpose was to make relief more broadly available to deserving defendants, given the critical interests at stake."  (*Vivar, supra*, 11 Cal.5th at p. 525.)  As relevant here, it is the express public policy of this state and the United States to avoid the harmful impact of deportation of foreign-born residents and their families, particularly their United States citizen children, based upon incorrect or insufficient information.  (§ 1016.2, subds. (g), (h);

13

*Vivar, supra*, at p. 516; see *Padilla, supra*, 559 U.S. at pp. 360, 364.)

Given the circumstances, here, including the lack of objection from the prosecutor, the fact that the expiration of defendant's probation was just five months away, allowing that if the prosecutor had objected, the trial court could have either dismissed without prejudice or continued the matter to a suitable time after that. (See *In re Griffin, supra*, 67 Cal.2d at p. 349.) We conclude that public policy supports going forward. We do not discern that the irregularity substantially affected the functioning of the courts, and we find that the prosecutor impliedly consented to the hearing on the premature motion. We thus reject the People's contention.

## II. Erroneous advice and defendant's misunderstanding

Defendant contends that his defense counsel misadvised him by saying he would not be deported if his offense were later reduced to a misdemeanor, and that the sentencing court misadvised him by stating that the deportation consequences may not apply to him. He asserts that he misunderstood the immigration consequences of the plea and would not have agreed to it if he had correctly understood them.

Defendant may be entitled to relief under section 1473.7 by showing that he accepted a plea due to an error that damaged his "'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. (§ 1473.7, subd. (a)(1).)" (*Vivar, supra*, 11 Cal.5th at p. 528.) As the facts supporting defendant's motion derive entirely from written declarations and other documents, and the trial court did not make credibility or other factual findings, we independently review the denial of the 1473.7

14

motion.  (*Vivar*, at pp. 525-529; see *People v. Lopez* (2022) 83 Cal.App.5th 698, 710-711 (*Lopez*).)

Munoz stated that it was likely (and) possible that he told defendant that "if he completed probation and reduced the felony to a misdemeanor that his conviction would no longer be deportable because it would be a misdemeanor with a maximum sentence of 364 days in jail."  It is probable that Munoz gave defendant this advice, as he did not deny doing so.  From that defendant brought the unsuccessful motion in November 2021 for a nunc pro tunc order reducing the jail time imposed to 364 days.

Even if the trial court had retroactively reduced defendant's felony conviction to a misdemeanor and if defendant's motion to reduce the jail time imposed to 364 days had been successful, it may not have changed his immigration status. "[F]ederal immigration law does not recognize a state's policy decision to expunge (or recall or reclassify) a valid state conviction. 'A conviction vacated for reasons "unrelated to the merits of the underlying criminal proceedings" may be used as a conviction in removal proceedings whereas a conviction vacated because of a procedural or substantive defect in the criminal proceedings may not.'" (*Prado v. Barr* (9th Cir. 2020) 949 F.3d 438, 441.)  Thus, "'[a] conviction vacated for rehabilitative or immigration reasons remains valid for immigration purposes, . . . one vacated because of procedural or substantive infirmities does not.'" (*Camacho, supra*, 32 Cal.App.5th at p. 1005.)  A retroactive reduction of the maximum misdemeanor sentence to 364 days under section 18.5 would have no effect, as section 18.5 was enacted by the California Legislature for the purpose of mitigating mandatory removal under federal law.  (See *Velasquez-Rios v. Wilkinson* (9th Cir. 2021) 988 F.3d 1081,

15

1089.)[10]  "It is clear that federal statutes can specify when removal is permissible and also when a cancellation of removal is warranted.  [T]hose federal law standards cannot be altered or contradicted retroactively by state law actions, and cannot be manipulated after the fact by state laws modifying sentences that at the time of conviction permitted removal or that precluded cancellation."  (*Velasquez-Rios*, at p. 1089.)[11]

We agree that defendant was misadvised, and the evidence supports his claim that he believed he would not be subject to adverse immigration consequences if he later had the offense or time in custody reduced and that he was able to do so.  As no evidentiary objections were made to the evidence and the People have proffered no argument in opposition to the merits of the motion, the uncontroverted evidence has established a reasonable basis for his erroneous belief.  The errors thus damaged defendant's "'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea of' nolo contendere.  (§ 1473.7, subd.

---

[10]  Section 18.5 provides that "[e]very offense which is prescribed by any law of the state to be punishable by imprisonment in a county jail up to or not exceeding one year shall be punishable by imprisonment in a county jail for a period not to exceed 364 days."  Despite the term "every offense" it applies to misdemeanors.  (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1310 (2013-2014 Reg. Sess.) as introduced Feb. 21, 2014, p. 2.)

[11]  Thus immigration consequences may have been avoided if the offense had been declared a misdemeanor with custody of 364 days or less imposed *at the time of defendant's plea and conviction*.  (See *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 907.)

(a)(1); see *Camacho, supra*, 32 Cal.App.5th at p. 1009; [citations].)" (*Lopez, supra*, 83 Cal.App.5th at p. 713.)

### III.  Prejudice

"What someone seeking to withdraw a plea under section 1473.7 must show is more than merely an error 'damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea.  (§ 1473.7, subd. (a)(1).)  The error must also be 'prejudicial.'" (*Vivar, supra*, 11 Cal.5th at p. 528.)  "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Id*. at p. 529.) In assessing whether the defendant has shown that reasonable probability, we consider the totality of the circumstances.  (*Ibid*.) We independently review not only questions of law: "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)  In assessing defendant's showing, we also focus on what defendant would have done, not whether he would have achieved a more favorable result.  (*Id*. at pp. 528-529.)

Defendant stated that because his wife and children were here and he knew no life other than in the United States, he would have risked trial and additional jail or prison time in order to avoid deportation; and that he was still willing to take additional incarceration time to avoid deportation.

It is not enough for defendant simply to declare that he would not have accepted any plea that would result in deportation; he must corroborate such assertions with objective evidence. (*Vivar, supra*, 11 Cal.5th at p. 530.) Particularly

17

relevant corroboration is evidence of the defendant's ties to the United States. (*Id.* at pp. 529-530, citing *Jae Lee v. United States* (2017) 582 U.S. __ [137 S.Ct. 1958, 1967-1969] and *People v. Martinez* (2013) 57 Cal.4th 555, 568.) In *Vivar*, the defendant's ties to the United States were considerable, as he "was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years. At the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California. By the time he was deported, his wife was undergoing radiation treatment for a thyroid condition." (*Vivar*,. at p. 530.) In the California Supreme Court's view, "these objective and contemporaneous facts corroborate, in a most convincing way, the statement in Vivar's declaration that he 'would never have plead[ed g]uilty' if his attorney had informed him of the plea's consequences." (*Id.* at p. 531.)

The *Vivar* court pointed to *People v. Mejia* (2019) 36 Cal.App.5th 859 and *Camacho, supra,* 32 Cal.App.5th 998 as other examples providing convincing corroboration of the defendant's claim that he would not have taken the plea deal. (*Vivar, supra,* 11 Cal.5th at pp. 530-531.) In *Camacho*, the defendant was brought to the United States from Mexico as a child, attended school through high school in Los Angeles County, married a United States citizen, had one American citizen child at the time of his plea and two at the time of his motion, was employed, and had no other adult criminal convictions. (*Camacho, supra,* pp. 1011-1012.) In *Mejia*, the defendant came to the United States at age 14 from Mexico to be with his six siblings, mother, and other family members except his father, and within three days, was working in his brother's paint shop. (*People v. Mejia, supra,* at p. 864.) At the time of his guilty plea,

18

he was 22 years old, married with an infant child, and had a steady job, and no ties to Mexico, as his father had died. (*Ibid.*) At the time of his section 1473.7 motion, his two children were grown, and he was still married to his wife. (*People v Mejia*, at p. 865.)

Here, too, defendant's ties to the United States, which bear similarities to *Vivar* and its two examples, provide convincing corroboration of defendant's claim that if he had correctly understood the consequences of his plea, he would have risked trial and additional jail or prison time in order to avoid deportation, and was still willing to take additional time of incarceration to avoid deportation. Defendant was born in Mexico in 1979, came to the United States as a child with his parents, attended middle and high school in Los Angeles, met his United States citizen wife in 2003, later married her and became a lawful permanent resident, raised six children with her, all United States citizens. They remain married. His single prior offense was driving under the influence of alcohol. In addition to defendant's deep ties to the United States, his minimal experience with the criminal justice system, his legal residency, as well as the support from family, friends, and his employer also corroborate his claim that his ability to remain in the United States with his family was a paramount concern. (See *People v. Lopez, supra*, 83 Cal.App.5th at p. 715.)

In our independent judgment after viewing the totality of the circumstances, we find that defendant's uncontradicted evidence has established by a preponderance of the evidence that due to his counsel's misadvisement and inadequate research, coupled with the sentencing court's confusing and contradictory advisement that its warning of certain deportation might not apply to him, he misunderstood the dire immigration

19

consequences that would follow from his plea. It is also reasonably probable that he would have rejected the plea had he correctly understood its actual immigration consequences. We conclude that defendant has thus established prejudicial error such that he is entitled to relief under section 1473.7.

## DISPOSITION

The order denying the motion to vacate defendant's conviction is reversed and the matter is remanded to the superior court with instructions to grant the motion and to vacate the conviction.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.

20

Filed 3/22/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CESAR ALFREDO VILLALBA, <br><br> Defendant and Appellant. | B318353 <br><br> (Los Angeles County <br> Super. Ct. No. VA143872) <br><br> ORDER CERTIFYING <br> OPINION FOR <br> PUBLICATION <br><br> NO CHANGE IN <br> JUDGMENT |

THE COURT:*

The opinion in the above-entitled matter filed on March 8, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

---

\*     LUI, P. J.          CHAVEZ, J.          HOFFSTADT, J.